**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------×

XIAMIN ZENG *a/k/a* "AIMEE ZANE,"

                *Plaintiff,*

      -against-                                 19 CV 03218

THE CITY OF NEW YORK, DETECTIVE DANIELLE      JURY DEMAND
FEBUS [RANK FY20000], INSPECTOR JOHN CHELL,
DETECTIVE GARY DENEZZO [RANK FY20000],
SERGEANT GEORGE TAVARES (#5354), POLICE          **FIRST AMENDED**
OFFICER IRWIN LUPERON (SHIELD NO #27763),      **COMPLAINT**
*and* POLICE OFFICER ERLENE WILTSHIRE (SHIELD
NO. #24340), *both their individual and professional
capacities,*

                *Defendants.*
-------------------------------------------------------------------×

        Plaintiff Pro se Xiamin Zeng, a/k/a Aimee Zane, alleges for her First Amended

Complaint against Defendants The City of New York (the "City") and Police Detective Danielle

Febus ("Detective Febus"), Police Inspector John Chell ("Inspector Chell"), Police Detective

Gary DeNezzo ("Detective DeNezzo"), Police Sergeant George Tavares ("Sergeant Tavares"),

Police Officer Irwin Luperon ("Officer Luperon"), and Police Officer Erlene Wiltshire ("Officer

Wiltshire")(all police detectives, inspectors, sergeants, and officers are, collectively, "Police

Officers") (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

        1.     The NYPD falsely arrested Ms. Zeng after directing her to report to Queens

Boulevard, saying her son was there.  Once she arrived, Detective Febus and an Administration

for Child Services ("ACS") Case Manager, Mr. Adrianzen questioned Ms. Zeng solely about her

previously filed federal lawsuit against ACS.[1]  After holding her for around seven hours, and

---

[1] The suit is *Zeng v. Augustin et al.*, 17 CV 9988.

refusing to let her see her son or attorney, the NYPD transferred Ms. Zeng to the 75th Precinct. At the 75th Precinct, Ms. Zeng continued to be questioned by NYPD Officers, including Inspector John Chell, about her ACS lawsuit.  Ms. Zeng was ultimately charged with (i) criminal contempt in the first degree, (ii) criminal contempt in the first degree, (iii) criminal contempt in the second degree, (iv) aggravated harassment in the second degree, and (v) harassment in the second degree for violating a full order of protection issued by Family Court.  All of these charges were dismissed.  At end, Ms. Zeng spent a total of 26 hours under unlawful detention, during which time she sustained substantial physical, emotional, and personal injuries, and was not allowed to see her son or attorney.

2. Plaintiff brings this action for compensatory damages and attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. § 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and New York State law.

4. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

## NOTICE OF CLAIM

5. Plaintiff filed a Notice of Claim with the Comptroller of the City of New York within 90 days of the accrual of her claims for false arrest and malicious prosecution.

6. More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

7. Plaintiff has complied with all conditions precedent necessary to commence an action pursuant to New York State Law.

8.      This action was commenced within one year and ninety days from the date the pendent claims herein accrued.

## VENUE

9.      Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which Plaintiff's claim arose.

## JURY DEMAND

10.     Plaintiff respectfully demands a trial before a jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

11.     Plaintiff Ms. Zeng at all times relevant hereto, was and is a resident of New York County, in the City and State of New York.

12.     Defendant the City was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

13.     The City maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, The City of New York.

14.     Upon information and belief, at all times relevant hereto, individual Defendant Detective Danielle Febus was a duly sworn member of the NYPD and was acting under the supervision of the NYPD and according to his official duties. Detective Febus is sued herein in his official and individual capacities. At all times hereinafter mentioned, Detective Febus was assigned to the NYPD Queens Child Abuse Squad ("QCAC").

3

15.     Upon information and belief, at all times relevant hereto, individual Defendant Inspector John Chell was a duly sworn member of the NYPD and was acting under the supervision of the NYPD and according to his official duties. Inspector Chell is sued herein in his official and individual capacities. At all times hereinafter mentioned, Inspector Chell was assigned to the 75th Precinct of the NYPD.

16.     Upon information and belief, at all times relevant hereto, individual Defendant Detective Gary DeNezzo was a duly sworn member of the NYPD and was acting under the supervision of the NYPD and according to his official duties.  Detective DeNezzo is sued herein in his official and individual capacities.  At all times hereinafter mentioned, Detective DeNezzo was assigned to the 75th Precinct of the NYPD.

17.     Upon information and belief, at all times relevant hereto, individual Defendant Sergeant George Tavares was a duly sworn member of the NYPD and was acting under the supervision of the NYPD and according to his official duties.  Sergeant Tavares is sued herein in his official and individual capacities.  At all times hereinafter mentioned, Sergeant Tavares was assigned to the 73rd Precinct of the NYPD.

18.     Upon information and belief, at all times relevant hereto, individual Defendant Officer Irwin Luperon was a duly sworn member of the NYPD and was acting under the supervision of the NYPD and according to his official duties.  Officer Luperon is sued herein in his official and individual capacities.  At all times hereinafter mentioned, Officer Luperon was assigned to the 45th Precinct of the NYPD.

19.     Upon information and belief, at all times relevant hereto, individual Defendant Officer Erlene Wiltshire was a duly sworn member of the NYPD and was acting under the supervision of the NYPD and according to his official duties.  Officer Wiltshire is sued herein in

his official and individual capacities. At all times hereinafter mentioned, Officer Wiltshire was

assigned to the 75th Precinct of the NYPD.

20.    Each and all of the acts of the individual Defendants alleged herein were done by

them while acting within the scope of their employment by the City.

## STATEMENT OF FACTS

### I. General Facts

21.    On December 20, 2017, Ms. Zeng filed a *pro se* federal case in the Southern

District of New York against Dana Augustin et al. (17CV9988 (JMF)), related to injuries

sustained by the Plaintiff's son during a supervised visitation with his father in the office of an

ACS/Child Protective Services ("CPS") social worker.

22.    On January 18, 2018, Ms. Zeng contacted the New York State Child Abuse

Hotline (the "Hotline") to inquire about the status of her ongoing case.

23.    The Hotline provided Ms. Zeng with no information whatsoever.

24.    Instead, two ACS employees, under the direction of ACS/CPS Case Manager

Diego Adrianzen, visited Ms. Zeng later that night on January 18, 2018.

25.    Upon information and belief, the purpose of this visit was to dissuade Ms. Zeng

from continuing her suit against ACS.

26.    In fact, during this meeting, the ACS employees did not investigate or discuss any

potential harm to Ms. Zeng's son.

27.    Between January 19 and January 30, 2018, Mr. Adrianzen and Danielle Febus, an

NYPD Detective, threatened and intimidated Ms. Zeng, her neighbors, her son, her son's school

associates both at Ms. Zeng's home and at her son's school.

28. On January 31, 2018, at approximately 10:00 a.m., after dropping her son off at school, Ms. Zeng received a text message saying that her son was in custody at the Queens Child Abuse Squad and that Ms. Zeng needed to pick him up.

29. Immediately upon receiving the text, Ms. Zeng went to pick her son up at 112-15 Queens Boulevard and arrived at approximately 11:00 a.m.

30. When she arrived, Ms. Zeng was locked in an examination room, where she was told to wait for Detective Febus.

31. Upon information and belief, Ms. Zeng's son was not there.

32. Ms. Zeng was confined, waiting for Detective Febus for three hours.

33. While she waited, Detective Febus was attending a personal doctor's appointment.

34. At approximately 2:00 p.m., Detective Febus and Mr. Adrianzen questioned Ms. Zeng, again, solely about her pending lawsuit.

35. Upon information and belief, Mr. Adrianzen's and Detective Febus's intention was to question Ms. Zeng and her son at the Queens Child Abuse Squad.

36. During this investigation, Detective Febus told Ms. Zeng that her lawsuit would require witnesses to come forward, which would cause trouble for them, and, as such, Ms. Zeng should dismiss her suit.

37. Detective Febus and Mr. Adrianzen also asked Ms. Zeng questions like: "Why are you suing ACS?," "Who helped you file the lawsuit?," "Who is your lawyer?," "Who lives with you?," and "What is your immigration status?"

38. Detective Febus and Mr. Adrianzen also threatened Ms. Zeng, saying, "If you file this lawsuit, lots of people will get in trouble."

39.     Ms. Zeng refused to answer Detective Febus's and Mr. Adrianzen's answer and repeatedly asked to see her lawyer and her son.

40.     Detective Febus and Mr. Adrianzen ignored Ms. Zeng's requests.

41.     At the end of the investigation, Detective Febus searched Ms. Zeng and confiscated her cell phone, scarf, and bag.

42.     As Mr. Adrianzen was leaving the investigation room, Ms. Zeng overheard Detective Febus whisper to him, "She doesn't think we can arrest her."

43.     Detective Febus and Mr. Adrianzen left the examination room between 4:00 p.m. and 5:00 p.m.

44.     Ms. Zeng remained confined in the investigation room for one to two hours more.

45.     At about 6:00 p.m., Detective Febus and another female Police Officer returned to the locked investigation room.

46.     Detective Febus searched Ms. Zeng again and handcuffed her.

47.     Then, without charge or allegations, or without any Miranda warning, Detective Febus and the other female Officer transported Ms. Zeng from Queens Boulevard to the 75th Precinct.

48.     During her relocation, Ms. Zeng repeatedly asked for her lawyer.

49.     Ms. Zeng also asked to where they were transporting her.

50.     All of Ms. Zeng's inquiries went ignored.

51.     At the 75th Precinct, Ms. Zeng's handcuffs were removed and she was locked in a room with Inspector Chell.

52.     Ms. Zeng complained to Inspector Chell that ACS had trapped her at Queens Boulevard seven hours and that she wanted to see her lawyer.

53.     Inspector Chell did not respond to Ms. Zeng's allegations and instead continued to question her as to why she was suing ACS.

54.     Inspector Chell questioned Ms. Zeng for about 20 to 30 minutes.

55.     Inspector Chell never inquired about the welfare of Ms. Zeng's son and when she asked to see he son, Inspector Chell responded, "later."

56.     Inspector Chell then left the room in which Ms. Zeng was held.

57.     Through the glass wall of the room, Ms. Zeng saw Inspector Chell going through her handbag and remove her attorney's business card.

58.     Ms. Zeng said, "You can't take my attorney's business card!"

59.     In response, Inspector Chell said, "I'm not taking it.  I'm only making a copy."

60.     Inspector Chell did not deny that he had taken Ms. Zeng's possession without her consent.

61.     Ms. Zeng said, "You can't do that!" to which Inspector Chell responded, "I can do exactly that."

62.     Ms. Zeng was then left in the examination room for between 2 to 3 hours.

63.     Between 10:00 p.m. and 11:00 p.m., Inspector Chell returned and handcuffed Ms. Zeng.

64.     Inspector Chell then brought her to a holding cell downstairs in the 75th Precinct.

65.     At this point, Ms. Zeng again asked to see her lawyer.

66.     Ms. Zeng also asked whether and why she was being arrested.

67.     Ms. Zeng's request for representation were not granted and her other inquiries were ignored.

68.     Ms. Zeng was then left in this holding cell for about two to three hours.

69.   Police Officers then took Ms. Zeng's fingerprints (and possibly her photograph), at which point she was transported to King's County Criminal Court.

70.   Ms. Zeng was locked in King's County Criminal Court until approximately 6:00 a.m., at which point she met with Public Defender Dara Herbert at the Brooklyn Defender Services.

71.   During his questioning, Inspector Chell never asked Ms. Zeng about Gang Liu,[2] Plaintiff's husband.

72.   Ms. Zeng's "breach of restraining order" involving Mr. Liu was the supposed (though later dismissed) reason for her arrest.

73.   On February 1, 2019, Ms. Zeng was arraigned and released.

74.   Ms. Zeng was ultimately charged with (i) criminal contempt in the first degree, (ii) criminal contempt in the first degree, (iii) criminal contempt in the second degree, (iv) aggravated harassment in the second degree, and (v) harassment in the second degree for violating a full order of protection issued by Family Court.

75.   Ms. Zeng was confined for 26 hours in total.

76.   Ultimately, all counts against Ms. Zeng were dismissed.

77.   As a result of her false arrest, Ms. Zeng sustained physical injuries, including hearing loss, dizzy spells and fainting; emotional injuries, including Post Traumatic Stress Disorder ("PTSD"); and personal injuries, including loss of income and inability to work (as a result of PTSD and other afflictions), transportation, administrative, medical and legal proceedings costs.

---

[2] Mr. Liu, the complaining witness in *People v. Xiamin Zeng* (Legacy Docket No.: 2018KN005716, Kings Criminal Court) has a long document history of mental illness and is extremely delusional.  For example, Mr. Liu believed Ms. Zeng to be a top Chinese spy and that she worked with the FBI to "launch a war" against him.  He also believes that Ms. Zeng "was sent by the Chinese government to ruin his life and career."

78.     During her false arrest, Ms. Zeng's son was removed from her custody for a total of three days, from January 31, 2018 until February 2, 2018, causing both Ms. Zeng and her son severe psychological and emotional damage.

79.     Throughout this process, Ms. Zeng was deprived of seeing her son for days when she had to go to court and win custody back from ACS.

80.     The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

81.     The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

82.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD, Plaintiff was placed under arrest unlawfully and maliciously prosecuted.

83.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

84.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff's constitutional rights.

85.     All of the foregoing acts by Defendants deprived Plaintiff of federally protected constitutional rights, particularly her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

**II. Facts Concerning Municipal Liability**

86.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

87.     All of the aforementioned acts deprived Plaintiff of her rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and were therefore in violation of 42 U.S.C. § 1983.

88.     The acts complained of were carried out by the Police Officers in their capacities as a police officer with all of the actual and/or apparent authority attendant thereto.

89.     The acts complained of were carried out by the aforementioned individual Police Officers in their capacitates as a police officer, pursuant to the customs, usages, practices, procedures, and rules of The City and the NYPD, all under the supervision of ranking officers of said department.

90.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted custom, usage, practice, procedure or rule of respective municipality/authority, which is forbidden by the Constitution of the United States.

91.     The Police Officers arrested, searched, and incarcerated Plaintiff, in the absence of any evidence of criminal wrongdoing, notwithstanding the Police Officers' knowledge that said search, arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety, and violate her constitutional rights, and there was no basis for it.

92.     The acts complained of were carried out by the aforementioned Police Officers in their capacity as a police officer and official with all the actual and/or apparent authority attendant thereto.

93.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of said department.

94.     Those customs, policies, patterns, and practices include, but are not limited to:

    i.   failing to train officers in not to retaliate against citizens who make complaints;

    ii.   failing to train officers in how to properly question a witness;

    iii.   failing to train officers in how to investigate the claims on an informant;

    iv.   failing to train officers in how to properly evaluate the credibility of an informant;

    v.   requiring officers to make a predetermined number of arrests within a predetermined time frame;

    vi.   requiring precincts to record a predetermined number of arrests within a predetermined time frame;

    vii.   failing to take any measures to correct unconstitutional behavior when brought to the attention of supervisors and/or policy makers; and

    viii.   failing to properly train police officers in the requirements of the United States Constitution.

95.     The aforesaid customs, policies, usages, practices, procedures and rules of Defendant the City and the NYPD directly cause, inter alia, the following unconstitutional practices:

    ix.   arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics;

    x.   arresting individuals regardless of probable cause in order to positively affect precinct-wide statistics;

    xi.   falsifying evidence and testimony to support those arrests; and

xii.   falsifying evidence and testimony to cover up police misconduct.

96.    In an Order dated November 30, 2009, in *Colon v. City of New York*, 09-CV-0008
(E.D.N.Y.) (Docket No. 34), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well
> as knowledge of cases in other federal and state courts, has revealed
> anecdotal evidence of repeated, widespread falsification by arresting
> police officers of the New York City Police Department. Despite
> numerous inquiries by commissions and strong reported efforts by the
> present administration -- through selection of candidates for the police
> force stressing academic and other qualifications, serious training to avoid
> constitutional violations, and strong disciplinary action within the
> department -- there is some evidence of an attitude among officers that is
> sufficiently widespread to constitute a custom or policy by the city
> approving illegal conduct of the kind now charged.

97.    Upon information, this policy was still in existence as of August 15, 2018.

98.    Upon information and belief, on or about October 17, 2011, in a Police Officer
Performance Objectives Operation Order (the "Operation Order"), NYPD Commissioner Kelly
directed all commands that, "Department managers can and must set performance goals" relating
to the "issuance of summons, the stopping and questioning of suspicious individuals, and the
arrests of criminals."

99.    Upon information and belief, that same Operation Order stated, "uniformed
members… who do not demonstrate activities… or who fail to engage in proactive
activities…will be evaluated accordingly and their assignments re-assessed."

100.   This data-driven policing plan (the "Plan") has resulted in lawsuits filed by
members of the NYPD in the United States District Court for the Southern District of New York,
alleging that the NYPD requires officers to meet fixed numerical goals for arrests and court
summonses each month.

101.     In 2012, Police Officer Craig Matthews commenced *Matthews v. City of New York*, 12 CV 1354 (BSJ) in the Southern District of New York, alleging that his complaints that the existing quota system was leading to unjustified stops and arrests, and thereby causing damage to the department's relationship with the local community led to his termination. There was little dispute that he made these complaints or that they were well founded. *See Matthews v. City of New York*, 779 F.3d 167, 169 (2d Cir. 2015).

102.     That the Plan, or something substantially similar, is still in effect is also reflected in a class action suit filed on December 10, 2015, *Edreweene Raymond v. The City of New York*,15-CV-6885 (SDNY), by various police officers alleging that the NYPD still requires officers to meet fixed numerical goals for arrests and court summonses each month. Officer Edreweene Raymond has alleged in this lawsuit and in the media that the NYPD engaged in unconstitutional, racist, discriminatory, and unlawful practices in attempting to achieve the goal of meeting quotas, as opposed to combating crime. According to a New Yorker article published August 27, 2018, which can be found online athttps://www.newyorker.com/podcast/political-scene/an-nypd-sergeant-blows-the-whistle-on-quotas, despite a 2010 statewide ban, officers are forced to meet monthly quotas for arrests and summonses.

103.     Therefore, it is apparent that, through the litigation brought in the U.S. Courts for New York, as well as the many cases filed in New York's State courts, thousands of civilian shave alleged that members of the NYPD has deliberately arrested them without probable cause.

104.     According to an article by CBS New York, which can be found online at https://newyork.cbslocal.com/2016/02/23/nypd-crime-statistics-available-public/, Police Commissioner William Bratton responded to these serious allegations of pushing quotas for arrests dismissively. Thus, even if the Defendant The City of New York was not the architect of

the policies and routinized conduct causing these unlawful arrests, it was certainly on notice of the practice, and by failing to take any meaningful corrective steps, has ratified, endorsed, or otherwise communicated its acceptance of this policy to the officers it employs.

105.    The Plan as kept in effect through the date of Plaintiff's arrest, even with Defendant The City's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found in sufficient cause to justify the imposition of charges or continued prosecution if charges were filed. This is precisely the conduct that has given rise to the constitutional violations against Plaintiff alleged herein. She was arrested without any probable cause and the judge dismissed the charge against her.

106.    In a February 4, 2016 New York Times article, which can be found online at http://nyti.ms/1nPv0mO, the City proudly announced that the NYPD had "created a new 40-member legal unit that develops evidence that the Law Department can use to defend lawsuits against the police, and the [Law Department] hired about 30 lawyers to bolster its litigation teams and to try more cases in court."

107.    Accordingly, rather than take meaningful steps to reduce and eliminate such misconduct by its officers, the City and the NYPD have instead affirmatively announced are newed commitment to defending such misconduct.

108.    Stated differently, The City's response to the litigation caused by misconduct on the part of the NYPD is, perplexingly, directed not at the deliberate, frequent, brazen constitutional violations giving rise to the litigation, but rather at defending such misconduct,

thereby enabling officers to continue engaging in unconstitutional conduct without fear of being sued or held accountable. In so doing, The City has dispensed altogether with any pretense that such misconduct is not sanctioned, ratified, or otherwise endorsed by The City and the NYPD's executive leaders and supervisory personnel.

109.     Based on the foregoing, The City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that The City, at the bare minimum, has been on notice of, and remained deliberately indifferent to, the risk that the undue emphasis on arrest quotas, or minimum activity levels, particularly when coupled with a decidedly and deliberately in different level of supervision, would lead to the violation of individuals' constitutional rights in general, and the violation of Plaintiff's rights in particular.

110.     The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD constitute a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

111.     The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

112.     The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

113.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of The City and the NYPD, Plaintiff was placed under arrest unlawfully.

114.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

115.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff's constitutional rights.

116.     All of the foregoing acts by Defendants deprived Plaintiff of federally protected constitutional rights, particularly her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

### CLAIMS FOR RELEIF
### FIRSTCLAIM FOR RELIEF
### (False Arrest Under 42 U.S.C. § 1983)

117.     Plaintiff here by realleges and incorporates each and every allegation contained in paragraphs 1 through 117with the same force as though separately alleged herein.

118.     As a result of the Defendants' conduct, Plaintiff was subjected to illegal, improper and false arrest, taken into custody, and caused to be falsely imprisoned, detained, and confined without any probable cause, privilege, or consent.

119.     As a result of the foregoing, Plaintiff's liberty was restricted, Plaintiff was put in fear for her safety and the safety of her son, and she was falsely arrested without probable cause.

### SECONDCLAIM FOR RELIEF
### (Malicious Prosecution Under 42 U.S.C. § 1983)

120.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 118with the same force as though separately alleged herein.

121.     Defendant fabricated knowingly false material evidence and forwarded said evidence to prosecutors at the Kings County District Attorney's Office.

122.      As a result, Plaintiff suffered deprivation of her liberty, as she was required to make numerous court appearances to contest the false accusations against her.

## THIRD CLAIM FOR RELIEF
### (False Arrest Pursuant to State Law)

123. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through    with the same force as though separately alleged herein.

124. That at all times hereinafter mentioned, Defendant the City assumed responsibility supervision, and authority over the NYPD and, its agents, servants and employees, and is liable to plaintiffs for the acts complained of herein under the theories of vicarious liability and *respondent superior*.

125. Plaintiff was detained and held under the imprisonment and control of the defendants under false pretenses.

126. Due to the negligence of the Defendants, their servants, agents, employees, licensees, independent contractors and/or police officers while in the course and scope of their employment with the City, and acting under authority of the NYPD, falsely arrested and imprisoned the Plaintiff, without warrant, authority of law or probable cause therefore.

127. That the acts and conduct on the part of the individual defendants constituting unlawful and unconstitutional conduct are: unlawfully and intentionally detaining and confining plaintiffs against their will and without their consent; unlawfully and intentionally detaining and confining plaintiffs without privilege, probable cause or valid legal process; fabricating evidence against the plaintiffs; unlawfully detaining and confining plaintiffs through the unlawful arrest of plaintiffs; unlawfully detaining and confining plaintiffs through the use of force; unlawfully arresting plaintiffs and placing plaintiffs in handcuffs without reasonable cause therefore, and committing such other acts resulting in the unlawful arrest and imprisonment of plaintiffs.

128. That at all times herein after mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

129.     That Plaintiff was conscious of the confinement.

130.     That as a direct, sole and proximate result of the false arrest and imprisonment, ,Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income, as well as emotional and mental distress for the well-being of her son.

131.     By the actions described above, the Police Officers and the City caused Plaintiff to be falsely arrested and/or falsely imprisoned without probable cause, without reasonable suspicion, illegally, without any proper claims, and without any right or authority to do so; and caused plaintiffs to suffer physical injuries. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

132.     As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FOURTHCLAIM FOR RELIEF
### (Malicious Prosecution Pursuant to State Law)

133.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 131with the same force as though separately alleged herein.

134.     That at all times hereinafter mentioned, Defendant the City assumed responsibility supervision, and authority over the NYPD and, its agents, servants and employees, and is liable to Plaintiff for the acts complained of herein under the theories of vicarious liability and *respondent superior*.

135.     That as a direct, sole and proximate result of the malicious prosecution, Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income.

136.     By the actions described above, the Police Officers and the City caused Plaintiff to be maliciously prosecuted without probable cause, illegally, without any proper claims, and without any right or authority to do so. The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated her statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.　　For the first cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements;

B.　　For the second cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements;

C.　　For the third cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements;

D.　　For the fourth cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements; and

E.　　For such other and further relief as the Court deems just and proper.

Dated:　New York, New York
　　　　July 9, 2020

By:　　　

Xiamin Zeng Plaintiff *Pro Se*
110 Columbia Street, Apt 1A
New York, NY 10002
C: (929) 250-4690
E: amyzane77@gmail.com

To:　Via Email
　　Stephanie De Angelis Esq.,
　　New York City Law Department
　　100 Church Street, Room 3-202
　　New York, NY 10007
　　E: sdeangel@law.nyc.gov

IN THE MATTER OF THE CLAIM OF
XIAMIN ZENG
-against-
THE CITY OF NEW YORK

HYC COMPTROLLER
BUR. INFORMATION SYSTEMS
CENTRAL IMAGING FACILITY
RECEIVED

2018 DEC 20  A 9: 47

## TO:  THE COMPTROLLER OF THE CITY OF NEW YORK

PLEASE TAKE NOTICE that the undersigned claimant(s) hereby make(s) claim and demand against the City of New York as follows:

**1.  The name and post-office address of each claimant and claimants attorney is:**

XIAMIN XENG, 110 COLUMBIA Street, Apt 1A, New York, NY 10002
Wylie Stecklow, Wylie Stecklow PLLC, 217 Centre Street, 6th Floor, NY NY 10013

**2.  The nature of the claim:**

Violation of civil rights, false arrest, unlawful detention, physical injuries, personal injuries, mental and emotional injuries, fear, anguish, excessive force, assault, battery, deprivation of her child and negligence of and/or by THE CITY OF NEW YORK, and/or its agents, servants and/or employees or agents thereof, including but not limited to as-yet unknown POLICE OFFICERS.  IT IS KNOWN THAT NYPD MOS GARY DENEZZO, GEORGE TAVARES, DANIELLE FEBUS, JOHN CHELL, were involved with this unlawful detention and arrest.

**3.  The time when, the place where and the manner in which the claim arose:**

Commencing on or about January 31, 2018, the above identified officers of the NYPD falsely arrested the claimant after telling her to report to 112-25 Queens Boulevard and saying that her son was there. Once there, MOS FEBUS and ACS Worker  ADRIANZEN questioned the claimant about a previously filed federal lawsuit against ACS. After holding claimant for six hours, and refusing to let her see her son, she was transferred to the 75th Precinct. At the 75th Precinct, claimant was again questioned about her ACS lawsuit, including by Inspector John Chell. After approximately 20 hours of detention she was arraigned and released on her own recognizance.  The case was initially filed with felonies as the top count and required her to return to court 8 different times. On April 4, 2018, the felony counts were dismissed, and on December 3, 2018, the remaining counts were dismissed.  In the process, she was deprived of her son for a few days while she had to go to court and win custody back from ACS.  In negligently hiring, training and/or supervising the aforementioned officers, and in all other ways, the City of New York its agents servants, and employees were negligent, careless and reckless.  The City of New York is also responsible under the theory of respondeat superior.

**4.  The items of damages or injuries claimed are:**

Violation of civil rights, physical injuries, personal injuries, mental and emotional injuries, fear, anguish, excessive force, assault, battery, and negligence.  Among the physical injuries sustained were injuries to claimant's wrists and torso, and mental and emotional injuries.

**TOTAL AMOUNT CLAIMED:  $ 1,000,000  (ONE MILLION DOLLARS)  or an appropriate amount to be determined at a trial by jury.**

The undersigned claimant therefore presents this claim for adjustment and payment.

Dated: New York, New York
December 17, 2018

_____
**XIAMIN ZENG**

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK,   :
                     :ss.
COUNTY OF NEW YORK   :

XIAMIN ZENG  being duly sworn, deposes and says that deponent is the claimant in the within action; that she has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

_____
**XIAMIN ZENG**

Sworn to before me this

17 day of December 2018

_____
NOTARY PUBLIC

COLIN M. STECKLOW ESQ.
Notary Public - State of New York
No. 02ST506337
Qualified in New York County
My Comm. Expires Jul. 22, 2006
2019