UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAMIN ZENG *a/k/a* "AIMEE ZANE,"

                Plaintiff,

*vs*.

THE CITY OF NEW YORK, DETECTIVE DANIELLE FEBUS [RANK FY20000], INSPECTORJOHN CHELL, DETECTIVE GARY DENEZZO [RANK FY20000], SERGEANT GEORGE TAVARES (#5354), POLICE OFFICER IRWIN LUPERON (SHIELD NO #27763), *and* POLICE OFFICER ERLENEWILTSHIRE (SHIELD NO. #24340), *both their individual and professional capacities,*

                Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**19-CV-3218-JGK-KHP**

## INTRODUCTION[1]

Plaintiff requests that the Court deny the Defendant's motion to dismiss. In construing Plaintiff's response, Plaintiff asks that the Court read any new additional facts asserted in this opposition brief as supplementing the operative complaint, as the Court may do with pro se litigants. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (overturning the district court's grant of dismissal where the complaint and opposition papers to a motion to dismiss when combined stated a claim upon which relief could be granted).

---

[1] "Portions of this document were prepared with assistance from the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY."

1

Plaintiff brings this action for compensatory damages and other fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights, namely, false arrest and subsequent malicious prosecution on or around January 31, 2018. In Defendant's brief in support of Motion to Dismiss, six arguments were made: (1) two sources of probable cause defeat plaintiff's false arrest claim; (2) plaintiff fails to state a claim for malicious prosecution; (3) defendants are entitled to qualified immunity; (4) plaintiff fails to advance any plausible theory of municipal liability; (5) plaintiff's state law claims fail as a matter of law; and (6) plaintiff fails to state a claim for a violation of her parental rights.

Plaintiff respectfully submit this response in opposition to Defendants' motion to dismiss.

## **FACTS**

Plaintiff notes that the Court has the operative complaint which sets out the relevant facts. Plaintiff refrains from unnecessarily re-stating those same facts here. However, Plaintiff notes that the memorandum of law in support of the motion to dismiss misstates the allegations in the complaint. To ensure clarity, Plaintiff notes the following misstatements and omissions in the memorandum of law.

1. Misstatement: On January 13, 2017, a complaining victim entered the New York City Police Department ("NYPD") 75th precinct and reported that he received a call from a "voice which he recognized to be his ex-girlfriend," plaintiff. The complaining victim stated that: (1) plaintiff said to him, "[g]ive

me back my camera or I will kill you;" and (2) he had an order of protection against plaintiff at the time that she threatened to kill him.

    a. Correction: On January 13, 2017, Gang Liu, Plaintiff's ex-boyfriend and father of her child, received a phone call on a blocked phone number and the voice on the other line allegedly side, in sum and substance, "Give me my camera back or I will kill you". Mr. Liu claimed the voice was Plaintiff's. A few days ago, on January 8, 2017, Mr. Liu posted a rambling blog post in which he accused Plaintiff, among other things, of being a Chinese spy sent by the Chinese government to come to New York to convert him into a Chinese spy, and using her connections within the NYPD, having Mr. Liu falsely arrested several times. Mr. Liu has a long documented history of mental illness and is extremely delusional. In 2011, a judge declared Mr. Liu mentally unstable, and appointed a custodian guardian to represent him against his wish.

2. Misstatement: On January 14, 2017, the NYPD activated an I-Card for Plaintiff's arrest. Pursuant to that I-Card, plaintiff was "[s]ought as perpetrator – probable cause to arrest," for a violation for PL 215.51.

    a. Correction: In the I-Card activated by Officer Christopher Robley, in the portion labeled "summary of investigation," –where officers are supposed to describe the facts out of which there is probable cause of a crime–simply states: " on January 14, 2017, at approximately 900 hours I activated an I-Card on suspect Zeng, Xiamin." There was no

mention of details of the victim report or follow-up investigation. Although it's possible that a police officer may act reasonably in relying information from other law enforcement officers through I-Card, even if he or she is not personally aware of the facts that provided the probable cause underlying the information she received, there were simply no facts in the I-Card from which Officers who made the arrest could have had a probable cause. There were no facts or circumstances, just the conclusion of probable cause. Officers cannot make constitutionally lawful arrests on the basis of another officer's conclusory statement that there is probable cause.

3. Misstatement: On January 18, 2018, Plaintiff initiated an ACS investigating by calling the "NYS Child Abuse Hotline." As part of that investigation, two ACS employees went to plaintiff's home for a visit.

   a. Correction: On January 18, 2018, Plaintiff contacted the New York State Child Abuse Hotline to inquire about the status of her ongoing case. The Hotline provided Plaintiff with no information whatsoever. Instead, two ACS employees, under the direction of ACS/CPS Case Manager Diego Adrianzen, visited Plaintiff later that night. During the meeting, the ACS employees did not investigate or discuss any potential harm to Plaintiff's son. Between January 19 and January 30, 2018, Mr. Adrianzen and Daniel Febus, an NYPD Detective, threatened and intimidated Plaintiff, her neighbors, her son, and her son's school associates, at Plaintiff's home and at her son's school.

> There was no investigation following Plaintiff's call and the purpose of the visit was to dissuade Plaintiff from continuing her suit against ACS.

4. Misstatement: On January 31, 2018, Plaintiff was informed that her son was at the Queens Child Abuse Squad.

    a. Correction: On January 31, 2018, at approximately 10 am, Plaintiff received a text message from Detective Febus saying that her son was in custody at the Queens Child Abuse Squad and that Plaintiff needed to pick him up. When Plaintiff arrived at 112-15 Queens Boulevard around 11 am, Plaintiff was locked in an examination room, where she was told to wait for Detective Febus, and Plaintiff's son was not there. Plaintiff was confined, waiting for Detective Febus for three hours.

5. Misstatement: On January 31, 2018, Plaintiff was arrested for a violation of PL 215.51 pursuant to (1) the complaining victim's complaint; and (2) the valid Order of protection, which the complaining victim had against Plaintiff at the time she threatened to kill him.

    a. Correction: On January 31, 2018, Detective Febus and Mr. Adrianzen questioned Plaintiff solely about her pending lawsuit against ACS when she was confined in the examination room. During the investigation, Detective Febus told Plaintiff that her lawsuit would require witnesses to come forward, which would cause trouble for them, and, as such, Plaintiff should dismiss her suit. "Detective Febus and Mr. Adrianzen also asked Plaintiff questions like: "Why are you

5

suing ACS?," "Who helped you file the lawsuit?," "Who is your lawyer?," "Who lives with you?," and "What is your immigration status?" At about 6 pm, Detective Febus searched Plaintiff and handcuffed her. Then, without charge or allegations, or without any Miranda warning, Detective Febus and another female police officer transported Plaintiff to the 75th Precinct. At the 75th Precinct, Plaintiff's handcuffs were removed and she was locked in a room with Inspector Chell. Inspector Chell continued to question Plaintiff as to why she was suing ACS. Plaintiff asked whether and why she was being arrested on multiple occasions when she was held at the 75th Precinct, her inquiries were ignored and she was left in a holding cell for about two to three hours.

## ARGUMENT

Here, the defendants have raised various arguments against the causes of action Plaintiff alleged under federal and state law. Plaintiff asks the Court to construe the complaint liberally in considering its ruling. Plaintiff does not intend to waive or forfeit any of Plaintiff's causes of action.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the motion to dismiss.

Dated: 3/9/2021

By: _____
Xiamin Zeng
Plaintiff *Pro Se*
110 Columbia Street, Apt 1A
New York, NY 10002
E: amyzane77@gmail.com

To: <u>VIA E-MAIL</u>
Stephanie De Angelis
*Attorney for Defendants*
New York City Law Department
100 Church Street, Room 3-202
New York, New York 10007