UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

XIAMIN ZENG a/k/a "AIMEE ZANE",

        Plaintiff,

- against -

THE CITY OF NEW YORK ET AL.,

        Defendants.

---

19-cv-3218 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Xiamin Zeng, has brought this pro se complaint pursuant to 42 U.S.C. § 1983 and New York state law against Detective Danielle Febus ("Detective Febus"), Inspector John Chell ("Inspector Chell"), Detective Gary DeNezzo ("Detective DeNezzo"), Sergeant George Tavares ("Sergeant Tavares"), Officer Irwin Luperon ("Officer Luperon"), Officer Erlene Wiltshire ("Officer Wiltshire") (collectively, the "police officers"), and the City of New York, alleging false arrest and malicious prosecution. The defendants move to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is **granted**.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-7-21

I

The following facts are drawn from the amended complaint ("AC").[1] The Court also takes judicial notice of the Complaint Report, the Temporary Order of Protection, the Activate Investigation Card, and the Arrest Report, see De Angelis Decl. Exs. B-E, for the purpose of establishing their existence, their legal effect, and the statements they contained, not for their truth.[2] Furthermore, the Amended Complaint incorporates the Criminal Complaint and the Temporary Order of Protection by reference. See AC ¶ 1, 71 n.2, 72.

Ms. Zeng is a resident of New York City. AC ¶ 11. The individual defendants are officers in the New York City Police Department ("NYPD") and are alleged to have acted under the supervision of the NYPD according to their official duties. The individual defendants are being sued in their official and individual capacities. AC ¶¶ 14-19.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.
[2] See Liang v. City of New York, No. 10-CV-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (taking judicial notice of criminal complaints and orders of protection as matters in the public record, but considering them only to establish their existence and legal effect, or to determine what statements they contained not for the truth of the matters asserted), aff'd sub nom. Liang v. Zee, 764 F. App'x 103 (2d Cir. 2019); Wims v. New York City Police Dep't., No. 10-Civ-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments and criminal disposition data."); but see Alvarez v. Cty. of Orange, 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015) (collecting cases in which courts declined to take judicial notice of such documents). In contrast, because it is not a matter of public record, the Court does not rely on the 50-h hearing testimony. See Bissinger v. City of New York, No. 06 CIV. 2325 (WHP), 2007 WL 2826756, at *2 n.1 (S.D.N.Y. Sept. 24, 2007).

2

A January 13, 2017 NYPD Complaint Record ("CR") states that Officer Wiltshire recorded a walk-in complaint at NYPD's 75th precinct from a complaining victim (the "Complainant") alleging that the Complainant received a phone call from his ex-girlfriend during which the ex-girlfriend stated "give me back my camera or I will kill you." CR at 2. The CR also reflects there was a temporary order of protection ("TOP") against the ex-girlfriend in place expiring on February 16, 2017. Id. The TOP was issued on December 15, 2016, and it ordered Ms. Zeng, the plaintiff in this action, to refrain from, among other acts, "stalking, harassment . . . intimidation, threats" against the Complainant. TOP at 1. On January 14, 2017, the NYPD issued an Activate Investigation Card ("AIC") on suspect Xiamin Zeng, stating that Ms. Zeng was "[s]ought as perpetrator - probable cause to arrest" for a violation of New York Penal Law § 215.51, criminal contempt in the first degree. AIC at 1.

On December 20, 2017, Ms. Zeng initiated a suit against Dana Augustin and others related to injuries sustained by her son during a supervised visitation with his father in the office of an Administration for Children's Services ("ACS")/Child Protective Services ("CPS") social worker (the "Augustin Action"). AC ¶ 21. On January 18, 2018, Ms. Zeng contacted the New York Child Abuse Hotline (the "Hotline") to inquire about the status of her case. AC ¶ 22. In response, two ACS employees,

under the direction of ACS/CPS case manager Diego Adrianzen, visited Ms. Zeng later that night. AC ¶ 24. Ms. Zeng alleges that the purpose of the visit was to dissuade her from continuing the Augustin Action. AC ¶ 25.

Ms. Zeng claims that between January 19 and January 30, 2018, Mr. Adrianzen and Detective Febus threatened and intimidated Ms. Zeng and various people associated with her. AC ¶ 27. On January 31, 2018, Ms. Zeng received a text message informing her that son was at the Queens Child Abuse Squad and asking her to pick him up. AC ¶ 28. When she arrived, Mr. Adrianzen and Detective Febus held and questioned Ms. Zeng, including about the Augustin Action, and searched her. AC ¶¶ 32-38. Ms. Zeng repeatedly asked to see her lawyer and her requests were ignored. AC ¶¶ 39-40.

After she had been held for approximately seven hours, Detective Febus handcuffed Ms. Zeng and transported her to the 75th precinct. AC ¶ 47. Once there, Ms. Zeng was questioned by Inspector Chell before being placed in a holding cell for several hours. AC ¶ 52-64. Officers then took Ms. Zeng's fingerprints and she was transported to Kings County Criminal Court, where she was held until 6 a.m. at which point she met with Public Defender Dara Herbert. AC ¶ 69-70. Ms. Zeng was charged with (i) two counts of criminal contempt in the first degree, (ii) criminal contempt in the second degree, (iii)

aggravated harassment in the second degree, and (iv) harassment in the second degree. AC ¶ 74. Ms. Zeng acknowledges that the "supposed" reason for her arrest was the breach of the restraining order involving Gang Liu, the Complainant in the criminal case against her. AC ¶ 71 n.2, 72. Ultimately, all charges were dismissed. AC ¶ 76.

Ms. Zeng alleges that as a result of her arrest, she sustained physical and emotional injuries, and incurred various costs. AC ¶ 77. Ms. Zeng claims that the customs, policies, usages, practices, procedures and rules of the City and the NYPD were the direct and proximate cause of the violations suffered by Ms. Zeng. AC ¶ 80. As evidence of the existence of these customs, policies, and practices, Ms. Zeng cites: (1) an Order dated November 30, 2009 issued by a court in the Eastern District of New York in an unrelated case; (2) an Order issued by Commissioner Kelly in 2011 directing the use of performance goals relating to stops and arrests; (3) a 2012 lawsuit filed by a police officer alleging that a quota system in the NYPD led to unjustified stops and arrests; (4) a 2015 class action filed by police officers alleging that the NYPD uses numerical quotas for stops and arrests. AC ¶¶ 96, 101, 102, 103.

II

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all

5

reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which

judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

## III

Ms. Zeng has asserted claims pursuant to 42 U.S.C. § 1983 and state law for false arrest and malicious prosecution.

### A

The defendants argue that the false arrest claim should be dismissed because there was probable cause to arrest Ms. Zeng.

A false arrest claim under Section 1983 based on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, "must show, inter alia, that the defendant intentionally confined [the plaintiff] without [the

plaintiff's] consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause constitutes such justification, and therefore "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see also Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003); Bullard v. City of New York, 240 F. Supp. 2d 292, 297 (S.D.N.Y. 2003); L.B. v. Town of Chester, 232 F. Supp. 2d 227, 233 (S.D.N.Y. 2002).

The plaintiff's claim of false arrest fails because the officers had probable cause to arrest her. An officer has probable cause to arrest when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152. The probable cause inquiry assesses "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Id. at 153. An officer has probable cause to arrest a suspect when a putative victim or an eyewitness reports that the suspect has committed a crime "unless the circumstances raise doubt as to the person's veracity." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); see Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously

8

held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed"). "The veracity of citizen complainants who are the victims of the very crime they report is assumed." Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993); see also Ziming Shen v. City of N.Y., 725 F. App'x 7, 13 (2d Cir. 2018).

Probable cause for the arrest in this case was based on the Complainant's statement that Ms. Zeng threatened to kill him and for the violation of a valid order of protection which the Complainant had against Ms. Zeng at the time she allegedly threatened to kill him. Ms. Zeng's only argument in opposition to the existence of probable cause is that the Activate Investigation Card did not contain factual detail aside from the conclusion that there was probable cause to arrest. However, "[u]nder the collective or imputed knowledge doctrine, an arrest . . . is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001). Accordingly, because the investigating officers who issued the Complaint

9

Report and the Activate Investigation Card had sufficient information to determine that there was probable cause to arrest, it is immaterial that the Activate Investigation Card did not include the facts supporting probable cause. Therefore, because the officers had probable cause for the arrest, the false arrest claim is dismissed.

Furthermore, because a false arrest claim under Section 1983 "is substantially the same as a claim for false arrest under New York law," Weyant, 101 F.3d at 852, the state law claim also fails. Accordingly, the false arrest claims are dismissed.

**B**

To sustain a Section 1983 claim based on malicious prosecution, a plaintiff must demonstrate conduct by the defendants that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty. Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 116 (2d Cir. 1995); see also Shabazz v. Kailer, 201 F. Supp. 3d 386, 391 (S.D.N.Y. 2016) (collecting cases). The elements of a malicious prosecution claim under New York law are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Shabazz, 201 F.

10

Supp. 3d at 391-92. A showing of malice can include that the officer acted "with a wrong or improper motive" or anything other than "a desire to see the ends of justice served." Fulton v. Robinson, 289 F.3d 188, 198 (2d Cir. 2002). "[T]he existence of probable cause to commence a proceeding is also a complete bar to a claim of malicious prosecution." Bullard, 240 F. Supp. 2d at 297.

In this case, the malicious prosecution claim fails because the defendants had probable cause to arrest the plaintiff. Furthermore, the plaintiff does not allege malice adequately, particularly in light of the officer's well-founded probable cause to execute the arrest based on the Complainant's allegations of death threats and the violation of a valid order of protection. See Sulkowska v. City of N.Y., 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) ("Only where probable cause to initiate a proceeding is so totally lacking may malice reasonably be inferred."). Accordingly, the malicious prosecution claims are dismissed.

C

The defendants argue that the allegations of municipal liability must be dismissed because the plaintiff has not alleged a valid underlying constitutional violation and because the plaintiff has not properly alleged facts to show the

11

existence of a policy or custom or that such policy or custom was the cause of her injuries.

The elements of a municipal liability claim pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978), are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right. Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 97-98 (2d Cir. 2020). Monell expressly prohibits respondeat superior liability for municipalities, Monell, 436 U.S. at 691, meaning that a plaintiff must demonstrate that "through its deliberate conduct, the municipality was the moving force behind the injury alleged," Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997); Roe v. City of Waterbury, 542 F.3d 31, 40 (2d Cir. 2008).

Because the complaint fails to state a claim of a constitutional deprivation by the officers, "there can be no municipal liability where no constitutional violations are found to have occurred." Doe v. Smith, 704 F. Supp. 1177, 1188 (S.D.N.Y. 1988). Moreover, the complaint fails to allege properly how any alleged policy or custom of the City or the NYPD caused her alleged injury. The complaint references various cases and an article to demonstrate the existence of policies that allegedly led to unjustified arrests and searches by the NYPD several years before the events at issue in this case.

12

However, besides a conclusory statement, the complaint makes no factual allegation to show that the policies alleged to have been in place in those unrelated cases are still in place and were linked to her alleged injuries. Accordingly, the municipal liability claim is dismissed.

## CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss is **granted** without prejudice. The plaintiff may file an amended complaint within 30 days of the date of this opinion.

The Clerk is directed to close ECF No. 53.

**SO ORDERED.**

Dated: New York, New York
May 7, 2021

_____
John G. Koeltl
United States District Judge