Docket No.  19 CV 3218 (JGK) (KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAMIN ZENG *a/k/a* "AIMEE ZANE,"

Plaintiff,

- against -

THE CITY OF NEW YORK, DETECTIVE DANIELLE
FEBUS [RANK FY2000], INSPECTOR JOHN CHELL,
DETECTIVE GARY DENEZZO [RANK FY2000],
SERGEANT GEORGE TAVERES (#5354), POLICE
OFFICER IRWIN LUPERON (SHIELD NO. 27763),
POLICE OFFICER ERLENE WILTSHIRE (SHIELD
NO. #24340), *and* POLICE OFFICER CHRISTOPHER
ROBLEY (#23263), *both in their individual and
professional capacities,*

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(B)(6)**

***GEORGIA M. PESTANA***
*Acting Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Gary DeNezzo, Danielle Febus, Erlene*
*Wiltshire, and Irwin Luperon*

*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Christopher D. DeLuca*
*Tel: (212) 356-3535*
*Matter No. 2019-032836*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .......................................................................... 1

PROCEDURAL HISTORY.................................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

STANDARD OF REVIEW ................................................................................... 3

ARGUMENT

      POINT I

           PLAINTIFF CANNOT NAME A NEW DEFENDANT BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED ................................. 4

      POINT II

           DEFENDANTS HAD PROBABLE CAUSE TO ARREST PLAINTIFF ................................................................. 7

      POINT III

           THE SAC FAILS TO ESTABLISH THE REQUISITE ELEMENTS FOR A MALICIOUS PROSECUTION CLAIM ........................................ 10

           A.  Plaintiff Cannot Establish that Defendants Commenced or Continued a Criminal Proceeding Against Her ...................................... 11

           B.  Plaintiff Cannot Establish that Probable Cause was Lacking for her Criminal Proceeding ......................................... 12

           C.  Plaintiff Cannot Establish Malice ...................................... 12

      POINT IV

           PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO SUPPORT § 1983 OR STATE LAW CLAIMS FOR EXCESSIVE FORCE ............................................. 13

**Page**

    A.  Plaintiff Cannot Establish an Excessive Force
       Claim Based on Tight Handcuffing ..................................................... 14

    B.  Plaintiff Fails to Allege Suffering Any Injury
       due to Being "Violently Dragged" ..................................................... 15

POINT V

    THE SAC FAILS TO STATE AN ABUSE OF
    CRIMINAL PROCESS CLAIM .................................................... 16

POINT VI ................................................................................................. 17

    THE SAC FAILS TO STATE A § 1983 CLAIM
    FOR DENIAL OF A FAIR TRIAL .......................................... 17

POINT VII ............................................................................................... 18

    THE SAC FAILS TO STATE A § 1983 CLAIM
    FOR DENIAL OF MEDICAL TREATMENT ....................... 18

POINT VIII ............................................................................................. 19

    DEFENDANTS ARE ENTITLED TO
    QUALIFIED IMMUNITY ........................................................ 19

POINT IX ................................................................................................ 21

    THE SAC FAILS TO STATE A CLAIM FOR
    MUNICIPAL LIABILITY ........................................................ 21

    A.  Plaintiff's *Respondeat Superior* Claim is
       Barred by Monell .............................................................................. 21

    B.  The SAC Fails to State an Underlying
       Constitutional Violation .................................................................. 22

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

Agosto v. N.Y.C. Dep't of Educ.,
    982 F.3d 86 (2d Cir. 2020)...................................................................................................21

Allen v. Antal,
    12-CV-8024-NSR, 2014 U.S. Dist. LEXIS 79031 (S.D.N.Y. Mar. 13, 2014).......................11

Amore v. Novarro,
    624 F.3d 522 (2d Cir. 2010)...............................................................................................20

Arroyo v. City of New York,
    683 F. App'x 73 (2d Cir. 2017) ...........................................................................................14

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..............................................................................................3, 11, 19

Barrow v. Wethersfield Police Dep't,
    66 F.3d 466 (2d Cir. 1995).................................................................................................5, 6

Bastuk v. Cty. of Monroe,
    628 F. App'x 4 (2d Cir. 2015) ...........................................................................................10

Bd. Of Cnt. Comm'rs of Bryan Cty., Okla. v. Brown,
    520 U.S. 397 (1997)...........................................................................................................21

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).............................................................................................................3

Brodie v. Fuhrman,
    07-CV-4212-DGT, 2010 U.S. Dist. LEXIS 30158 (E.D.N.Y. Mar. 29, 2010) .......................10

Brown v. City of New York,
    13-CV-1018-KBF, 2016 U.S. Dist. LEXIS 53365 (S.D.N.Y. Apr. 20, 2016) .......................19

Bullard v. City of New York,
    240 F. Supp. 2d 292 (S.D.N.Y. 2003).................................................................................12

Ceara v. Deacon,
    916 F.3d 208 (2d Cir. 2019)................................................................................................6

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998)...............................................................................................18

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)...........................................................................................................22

**<u>Cases</u>**                                                                          **<u>Pages</u>**

<u>Cook v. Sheldon</u>,
     41 F.3d 73 (2d Cir. 1994)......................................................................................16

<u>Cugini v. City of New York</u>,
     941 F.3d 604 (2d Cir. 2019).............................................................................13, 14

<u>Curiano v. Suozzi</u>,
     63 N.Y.2d 113 (1984) ........................................................................................16

<u>Curley v. Vill. of Suffern</u>,
     268 F.3d 65 (2d Cir. 2001)..................................................................................8, 9

<u>Darnell v. Pineiro</u>,
     849 F.3d 17 (2d Cir. 2017)..................................................................................18

<u>Dean v. Kochendorfer</u>,
     237 N.Y. 384 (1924) ..........................................................................................16

<u>Escalera v. Lunn</u>,
     361 F.3d 737 (2d Cir. 2004)................................................................................20

<u>Farmer v. Brennan</u>,
     511 U.S. 825 (1994)............................................................................................18

<u>Garcia v. Does</u>,
     779 F.3d 84 (2d Cir. 2015)..................................................................................20

<u>Global Network Commc'ns, Inc. v. City of New York</u>,
     458 F.3d 150 (2d Cir. 2006)..................................................................................3

<u>Gonzalez v. Hirschman</u>,
     15-CV-810-GHW, 2016 U.S. Dist. LEXIS 10228 (S.D.N.Y. Jan. 28, 2016) ........14

<u>Graham v. Connor</u>,
     490 U.S. 386 (1989)............................................................................................13

<u>Grytsyk v. Morales</u>,
     19-CV-3470-JMF, 2021 U.S. Dist. LEXIS 54642 (S.D.N.Y. Mar. 22, 2021) .................14, 15

<u>Hagans v. Nassau Cty. Police Dep't</u>,
     18-CV-1918-JS-AYS, 2020 U.S. Dist. LEXIS 47090 (E.D.N.Y. Mar. 18, 2020) ...................5

<u>Harrison v. Barkley</u>,
     219 F.3d 132 (2d Cir. 2000)................................................................................18

**Cases**                                                                                   **Pages**

Hincapie v. City of New York.,
434 F. Supp. 3d 61 (S.D.N.Y. 2020)...................................................................4

Hogan v. Fischer,
738 F.3d 509 (2d Cir. 2013)...........................................................................4

Jaegly v. Couch,
439 F.3d 149 (2d Cir. 2006)............................................................................7

Johnson v. City of New York,
551 F. App'x 14 (2d Cir. 2014) ......................................................................22

Johnson v. Constantellis,
221 F. App'x 48 (2d Cir. 2007) ......................................................................12

Jovanovic v. City of New York,
486 F. App'x 149 (2d Cir. 2012) ..............................................................17, 18

King v. Falco,
16-CV-6315, 2018 U.S. Dist. LEXIS 208684 (S.D.N.Y. Dec. 11, 2018) ..............18

Kisela v. Hughes,
138 S. Ct. 1148 (2018)..................................................................................19

Krause v. Bennett,
887 F.2d 362 (2d Cir. 1989)............................................................................9

Liverpool v. Davis,
442 F. Supp. 3d 714 (S.D.N.Y. 2020)................................................................5

Livigni v. Ortega,
15-CV-9454-CM, 2016 U.S. Dist. LEXIS 193496 (S.D.N.Y. Oct. 19, 2016) .........14

Lowth v. Town of Cheektowaga,
82 F.3d 563 (2d Cir. 1996).............................................................................12

Lynch v. Ackley,
811 F.3d 569 (2d Cir. 2016)...........................................................................19

Malley v. Briggs,
475 U.S. 335 (1986)......................................................................................19

Mayzick v. Cty. of Nassau,
32 F. Supp. 3d 399 (E.D.N.Y. 2014) ..........................................................11, 12

**Cases**                                                                                                    **Pages**

McIntosh v. City of New York,
    722 F. App'x 42 (2d Cir. 2018) ...........................................................................9, 20

Miloslavsky v. AES Eng'g Soc'y, Inc.,
    808 F. Supp. 351 (S.D.N.Y. 1992) ...........................................................................8

Monell v. Dep't of Soc. Servs.,
    436 U.S. 658 (1978)...........................................................................21, 22

Murphy v. Lynn,
    118 F.3d 938 (2d Cir. 1997)...........................................................................10

Nansaram v. City of New York,
    12-CV-5038-NGG-RLM, 2015 U.S. Dist. LEXIS 124436
    (E.D.N.Y. Sep. 1, 2015)...........................................................................9, 20

Panetta v. Cassel,
    7:20-CV-2255-PMH, 2020 U.S. Dist. LEXIS 86982 (S.D.N.Y. May 18, 2020) ....................5

Paulin v. Town of New Windsor,
    18-CV-06182-PMH, 2020 U.S. Dist. LEXIS 184170 (S.D.N.Y. Oct. 5, 2020)......................18

Pearson v. Callahan,
    555 U.S. 223 (2009)...........................................................................19

Reyes v. Fairfield Properties,
    661 F. Supp. 2d 249 (E.D.N.Y. 2009) ...................................................................3

Roe v. City of Waterbury,
    542 F.3d 31 (2d Cir. 2008)...........................................................................21

Rohman v. N.Y.C. Transit Auth.,
    215 F.3d 208 (2d Cir. 2000)...........................................................................11

Ruotolo v. City of New York,
    514 F.3d 184 (2d Cir. 2008)...........................................................................6

Saucier v. Katz,
    533 U.S. 194 (2001)...........................................................................19

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)...........................................................................8, 16

Shabazz v. Kailer,
    201 F. Supp. 3d 386 ...........................................................................11

**Cases**                                                                                          **Pages**

Shepard v. Kelly,
    2021 U.S. Dist. LEXIS 78337 (S.D.N.Y. Apr. 23, 2021)........................................................15

Simpson v. Town of Warwick Police Dep't.,
    159 F. Supp. 3d 419 (S.D.N.Y. 2016)......................................................................................21

Singer v. Fulton Cty. Sheriff,
    63 F.3d 110 (2d Cir. 1995)........................................................................................................11

Singleton v. City of New York,
    632 F.2d 185 (2d Cir. 1980)........................................................................................................4

Smith v. City of New York,
    12-CV-4572-KPF, 2013 U.S. Dist. LEXIS 167314 (S.D.N.Y. Nov. 25, 2013) ........................3

Smith v. City of New York,
    697 F. App'x 88 (2d Cir. 2017) ..................................................................................................8

Sulkowska v. City of New York,
    129 F. Supp 2d 274 (S.D.N.Y. 2001)........................................................................................13

Sullivan v. City of New York,
    17-CV-3779-KPF, 2018 U.S. Dist. LEXIS 114366 (S.D.N.Y. July 10, 2018) ........................14

Tatem v. Perelmuter,
    3:18-CV-00382-VAB, 2021 U.S. Dist. LEXIS 9009 (D. Conn. Jan. 19, 2021)........................6

U.S. v. Colon,
    250 F.3d 130 (2d Cir. 2001)........................................................................................................8

Watkins v. Ruscitto,
    14-CV-7504-AJP, 2016 U.S. Dist. LEXIS 89499 (S.D.N.Y. July 11, 2016) .....................8, 20

Weiner v. McKeefery,
    90 F. Supp. 3d 17 (E.D.N.Y. 2015) ...........................................................................................9

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996)........................................................................................................7

White v. Pauly,
    137 S. Ct. 548 (2017) (per curiam) ....................................................................................19, 20

Williams v. Amtrak,
    830 F. App'x 46 (2d Cir. 2020) ...............................................................................................13

**Cases**                                                                    **Pages**

Zalaski v. City of Hartford,
    723 F.3d 382 (2d Cir. 2013).............................................................................20

**Statutes**

42 U.S.C. § 1983 ...............................................................1, 4, 7, 11, 13, 17, 18, 21

Fed. R .Civ. P. 4(m) .............................................................................................5, 7

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 3

Fed. R. Civ. P. 15(c) ................................................................................................6

Fed. R. Civ. P. 15(c)(1)(C) .......................................................................................5

N.Y. C.P.L.R. § 215(3) .............................................................................................4

## PRELIMINARY STATEMENT

*Pro se* plaintiff ("plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against City of New York, Gary DeNezzo, Danielle Febus, Erlene Wilshire, and Irwin Luperon ("defendants"),[1] alleging that, on January 31, 2018, defendants subjected her to an unlawful arrest and subsequent malicious prosecution.  (See generally Second Amended  Complaint "SAC")), annexed to the Declaration of Christopher D. DeLuca, dated July 16, 2021 ("DeLuca Decl.), as Exhibit "A" at ¶¶ 21–87)  The Court should dismiss the SAC with prejudice as: (1) plaintiff cannot name new defendants as the statute of limitations has expired; (2) probable cause existed to arrest plaintiff; (3) plaintiff fails to state a claim for: (i) malicious prosecution; (ii) excessive force (federal and state); (iii) malicious abuse of process; (iv) denial of right to fair trial; (v) denial of medical treatment; (8) defendants are entitled to qualified immunity; and (9) plaintiff fails to advance any plausible theory of municipal liability.

## PROCEDURAL HISTORY

On April 10, 2019, plaintiff filed a complaint, alleging constitutional violations stemming from her January 31, 2018 arrest and subsequent prosecution.  (DE 2)

On July 9, 2020, plaintiff filed a First Amended Complaint ("FAC"), again bringing claims of false arrest and malicious prosecution.  (DE 43)  On January 12, 2021, defendants moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6), (DE 53–56), and on May 7, 2021, the Court granted that motion without prejudice.  (DE 66)  On June 7, 2021, plaintiff filed the SAC, again bringing claims of false arrest and malicious prosecution, along with several new claims: excessive force, denial of fair trial, denial of medical treatment, abuse

---

[1] The following individuals named as defendants were never properly served: Inspector John Chell, (DE  15), Sergeant George Taveres (DE  14), and Police Officer Christopher Robley.

of criminal process, and *respondeat superior*.  (DE  68)

## STATEMENT OF FACTS[2]

On January 13, 2017, complaining victim Gang Liu entered the 75th precinct and reported he received a call from a "voice which he recognized to be his ex-girlfriend," plaintiff. (Complaint No. 2017-075-000672, DeLuca Decl. as Ex. "B" ("Complaint Report")).  Mr. Liu reported:  (1) plaintiff said to him, "Give me back my camera or I will kill you;" and (2) he had an order of protection against plaintiff at the time that she threatened to kill him.  Id.  On January 14, 2017, the NYPD confirmed that there was a valid Order of Protection, which required plaintiff  to, among other things, "refrain from assault, stalking, harassment, aggravated harassment, menacing, . . . intimidation, threats, or any criminal offense against" the complaining victim.  (Order of Protection, dated December 15, 2016, DeLuca Decl., Ex. "C" ("Order of Protection")  On January 14, 2017, the NYPD activated an Investigation Card for plaintiff's arrest.  (Active Investigation Card for Complaint No. 2017-075-00627, DeLuca Decl., Ex. "D" ("I-Card"))  Pursuant to the I-Card, plaintiff was "[s]ought as perpetrator – probable cause to arrest," for a violation of P.L. 215.51.  Id.

On January 18, 2018, plaintiff initiated an investigation with the Administration of Children's Services ("ACS") by calling the "NYS Child Abuse Hotline."  (SAC at ¶ 22)  As part of that investigation, two ACS employees visited plaintiff's home.  (Id. at ¶ 28)  On January 31, 2018, plaintiff was informed that her son was at the Queens Child Abuse Squad.  (Id. at ¶ 32)  On January 31, 2018, plaintiff was arrested for a violation of PL 215.51 pursuant to: (1) the

---

[2] This statement of facts is based entirely on the allegations in plaintiff's SAC and is not an admission of any such facts.  Defendants reserve the right to contest any fact alleged in the SAC should the SAC not be dismissed.

complaining victim's complaint; and (2) the valid Order of Protection, which the complaining victim had against plaintiff at the time she threatened to kill him.  (See Arrest Report No. K18606959, DeLuca Decl., Ex. "E")  Plaintiff was charged with: (1) two counts of criminal contempt in the first degree; (2) criminal contempt in the second degree, (3) aggravated harassment in the second degree; and (4) harassment in the second degree for violating a full order of protection issued by family court.  (SAC at ¶ 81; Criminal Court Complaint, DeLuca Decl., Ex. "F")  All charges against plaintiff were dismissed.  (SAC at ¶ 83; Certificate of Disposition, DeLuca Decl., Ex. "G").

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to FRCP 12(b)(6), the Court must accept as true all factual allegations in the complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That tenet, however, is "inapplicable to legal conclusions."  Id.  Hence, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).

Courts may consider extrinsic materials if they are integral to the complaint or appropriate subjects for judicial notice.  Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006).  "It is well-settled that in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records."  Reyes v. Fairfield Properties, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009); see also Smith v. City of New York, 12-CV-4572-KPF, 2013 U.S. Dist. LEXIS 167314 at *3 (S.D.N.Y. Nov. 25, 2013) (taking judicial notice of arrest report and certificate of disposition).

The Court has already taken judicial notice of the Complaint Report, the Temporary Order of Protection, the I-Card, and the Arrest Report, "for the purpose of establishing their existence, their legal effect, and the statements they contained, not for their truth." (May 7, 2021 Mem. Op. & Order, DE  66, at 2)  Additionally, the Court found that the FAC incorporates the Criminal Court Complaint and the Temporary Order of Protection by reference.  (Id.)  The SAC incorporates the same documents, as well as the I-Card, (SAC at ¶¶ 24, 78 n.2, 79, and Ex. B to DeLuca Decl.), and the Certificate of Disposition, (id. at ¶ 83)  Accordingly, when ruling on defendants' Motion to Dismiss the SAC, the Court may consider all six of these documents for the purposes of establishing their existence, legal effect, and statements contained therein.

## ARGUMENT

## POINT I

### PLAINTIFF CANNOT NAME A NEW DEFENDANT BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED

Plaintiff's time to name Officer Robley as a defendant for her claims for false arrest, excessive force, abuse of criminal process, and denial of medical treatment has expired. In New York, §1983 actions are subject to a three-year §statute of limitations.  Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013).  Under New York law, "[c]auses of action based on false arrest and false imprisonment accrue upon the subject's release from confinement and are governed by a one-year statute of limitations."  Hincapie v. City of New York., 434 F. Supp. 3d 61, 78 (S.D.N.Y. 2020); N.Y. C.P.L.R. § 215(3).

Plaintiff's claims for false arrest, excessive force, and denial of medical treatment accrued on January 31, 2018, the date on which plaintiff alleges she was arrested, (SAC at ¶¶ 32–34), violently dragged, (id. at ¶ 52), tightly handcuffed, (id. at ¶ 70), and denied

her requested medical treatment, (id. at ¶¶ 206–212); see also Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) (explaining that a §1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of [her] action").

Plaintiff's abuse of criminal process claim accrued, at the latest, on February 1, 2018, after she was arraigned and released.  (SAC at ¶ 80); see also Hagans v. Nassau Cty. Police Dep't, 18-CV-1918-JS-AYS, 2020 U.S. Dist. LEXIS 47090, at *13 (E.D.N.Y. Mar. 18, 2020). Plaintiff's malicious prosecution and denial of fair trial claims, however, accrued on June 14, 2018, when the last three of the five charges against her were dismissed.  See Certificate of Disposition, DeLuca Decl., Ex. "G"; see also Panetta v. Cassel, 7:20-CV-2255-PMH, 2020 U.S. Dist. LEXIS 86982, at *10 (S.D.N.Y. May 18, 2020) (citations omitted) (explaining that §1983 claims for malicious prosecution and fabricated evidence do not accrue "until there is a favorable termination of the plaintiff's criminal proceedings").  Accordingly, the limitations period for plaintiff's federal claims for (1) false arrest, excessive force, and denial of medical treatment expired on January 31, 2021; (2) abuse of criminal process expired on February 1, 2021; and (3) malicious prosecution and denial of a fair trial expired on June 14, 2021.  Plaintiff filed the SAC on June 7, 2021, (DE 68), about five months after the limitations period expired for her federal claims for false arrest, excessive force, denial of medical treatment, and abuse of criminal process.

The SAC does not "relate back" to the original complaint.  An amended complaint must meet four criteria to relate back to the original complaint under Rule 15(c)(1)(C): "(i) any new claim 'must have arisen out of conduct set out in the original pleading'; (ii) any newly named defendant 'must have received such notice that it will not be prejudiced in maintaining its defense'; (iii) any newly named defendant must have known that 'but for a

mistake of identity, the original action would have been brought against [him]'; and (iv) 'the second and third criteria [must be] fulfilled within [the period provided by Rule 4(m) for serving the summons and complaint], and . . . the original complaint [must have been] filed within the limitations period.'" Liverpool v. Davis, 442 F. Supp. 3d 714, 725 (S.D.N.Y. 2020) (quoting Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 468–69 (2d Cir. 1995)).  Critically, however, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." Ceara v. Deacon, 916 F.3d 208, 212 (2d Cir. 2019) (quoting Barrow, 66 F.3d at 470).

The first criterion is satisfied because plaintiff's claims against Officer Robley arose out of the same conduct set out in her original complaint: namely, her arrest.  However, none of the three remaining criteria are satisfied.  The second criterion turns on whether a party would suffer undue prejudice in defending against the new claim.  Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (internal quotation marks omitted).  In Tatem v. Perelmuter, 3:18-CV-00382-VAB, 2021 U.S. Dist. LEXIS 9009, (D. Conn. Jan. 19, 2021), the court held the defendant had not demonstrated that he would suffer undue prejudice, in part, because (a) plaintiff had joined the new party within the time limited prescribed by the scheduling order, and (b) dispositive motions had not yet been addressed.  Id. at **16–17.  Here however, the most recent scheduling order set a deadline of May 31, 2020, for joining additional parties (which plaintiff obviously did not comply with), (DE 39), and the Court has addressed defendants' dispositive motion to dismiss the FAC, (DE66).  Hence, Officer Robley did not receive such notice that he would not be prejudiced in maintaining his defense.

Regarding the third criterion, neither of plaintiff's earlier pleadings name "John Doe" defendants.  (DE 2, 43)  Plaintiff is not substituting Officer Robley for an unidentified

defendant, so she cannot claim her original action would have been brought against him but for a mistake of identity.  Plaintiff offers no explanation for her failure to name Officer Robley in her earlier pleadings, or why she failed to comply with the Court's scheduling order (DE 39), and as such, she cannot name him now.

Finally, the fourth criterion is not satisfied because the second and third criteria are not satisfied at all.  Even if the Court finds those criteria were both satisfied, they were not satisfied within the period provided by Rule 4(m) for serving the summons and complaint; that period expired on April 10, 2019 — 90 days after the complaint was filed.  Accordingly, the time for plaintiff to sue Officer Robley for false arrest, excessive force, abuse of criminal process, and denial of medical treatment has expired.

## POINT II

### DEFENDANTS HAD PROBABLE CAUSE TO ARREST PLAINTIFF

This Court has already held that defendants had probable cause to arrest for plaintiff.  (Mem. Op. & Order dated May 7, 2021, DE 66, at 8)  There is no reason to disturb that holding.  The SAC contains no new factual allegations that warrant a different conclusion.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  The existence of probable cause is a complete defense to a claim of false arrest, whether the action is brought under state law or federal law.  See Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).  Police officers have probable cause for an arrest when they have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Id.

The probable cause inquiry turns on "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Id. at 153.  When a putative victim or an eyewitness reports that the suspect has a committed a crime, a police officer has probable cause to arrest that suspect "unless the circumstances raise doubt as to the person's veracity."  Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).  "The veracity of citizen complainants who are the victims of the very crime they report is assumed." Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (citations omitted).

Importantly, "arresting officers do not need to independently determine that probable cause exists as long as the officer ordering the arrest possesses sufficient probable cause to direct it."  Watkins v. Ruscitto, 14-CV-7504-AJP, 2016 U.S. Dist. LEXIS 89499, at *15 (S.D.N.Y. July 11, 2016).  This principle, called the "fellow officer rule" or the "collective knowledge doctrine," provides that, when determining whether an arresting officer had probable cause to arrest, "the knowledge of one is presumed shared by all."  Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003) (citations and internal quotation marks omitted).  Hence, "'an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but sufficient information to justify the arrest was known by other law enforcement officials initiating or involved with the investigation.'"  Smith v. City of New York, 697 F. App'x 88, 89 (2d Cir. 2017) (internal ellipses omitted) (quoting U.S. v. Colon, 250 F.3d 130, 135 (2d Cir. 2001)).

While plaintiff discusses the collective knowledge doctrine and the I-Card at length, (SAC ¶¶ at 87–95), she misconstrues the law.  Moreover, the SAC advances the same arguments that this Court previously rejected.  First, the I-Card was sufficient to give rise to probable cause.  In the Order dismissing the FAC, Your Honor held that, "because the

investigating officers who issued the Complaint Report and the Activate Investigation Card had sufficient information to determine that there was probable cause to arrest, it is immaterial that the Activate Investigation Card did not include the facts supporting probable cause." (Mem. Op. & Order dated May 7, 2021, DE 66, at 9–10)  Hence, contrary to plaintiff's legal conclusion that Detective DeNezzo "cannot simply rely on the I-Card," he was entitled to do just that.

Second, defendants were not obligated to question the veracity of Mr. Liu's statement.  The Second Circuit has "found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee."  Curley, 268 F.3d at 70.  And where there are conflicting accounts, officers' "'function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.'"  McIntosh v. City of New York, 722 F. App'x 42, 45 (2d Cir. 2018) (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)).  Therefore, defendants were entitled to rely on Mr. Liu's claims—that he received a call from a blocked phone number, that he heard a voice say, "Give me my camera back or I will kill you," and that he recognized the voice as plaintiff's (SAC at ¶ 23)—as a basis for probable cause.

Plaintiff relies on cites case law stating that "where an officer is aware of a 'bitter prior relationship' between the alleged victim and the accused, the victim's assertions alone 'may not constitute probable cause; the office may need to investigate further.'" (SAC at ¶ 95) (citing Nansaram v. City of New York, 12-CV-5038-NGG-RLM, 2015 U.S. Dist. LEXIS 124436, at *8 (E.D.N.Y. Sep. 1, 2015)).  Curiously, plaintiff ignores the following sentence of the Nansaram Court's opinion: "However, 'the fact that a victim may be entangled in a domestic dispute does not, in and of itself, undermine the victim's veracity.'"  Nansaram, 12-CV-5038 (quoting Weiner v. McKeefery, 90 F. Supp. 3d 17, 30–31 (E.D.N.Y. 2015)).  Hence, it is immaterial that "Officer

Robley either knew about [plaintiff's] relationship [to Mr. Liu] from the protective order but did no further investigation or did an investigation and learned of Mr. Liu's background and that Mr. Liu was not a reliable source of information."  (SAC at ¶ 95)  As such, Officer Robley was entitled to rely on Mr. Liu's complaining victim statement.  See Brodie v. Fuhrman, 07-CV-4212-DGT, 2010 U.S. Dist. LEXIS 30158, at *25 (E.D.N.Y. Mar. 29, 2010) (citations omitted).

To be sure, the Brodie Court found the arresting officer in that case had reason to doubt the complaining victim's overall veracity due to his prior relationship with the plaintiff. Brodie, 07-CV-4212, at *19.  There, however, the arresting officer investigated further because the complaining victim was known to have made frequent visits to the precinct.  Id.  Here, the SAC advances no such allegations.  Rather, plaintiff alleges there was information "available to both officers" evidencing Mr. Liu's unreliability and that "[e]ither officer *may* have been aware of" a "rambling blog post" that Mr. Liu had published "just a few days before coming to the precinct.  (SAC at ¶ 95) (emphasis added).  Even if defendants had actual knowledge of facts suggesting that Mr. Liu suffers from mental illness, defendants were still entitled to believe his complaint.  See Bastuk v. Cty. of Monroe, 628 F. App'x 4, 6 (2d Cir. 2015) (rejecting argument that "investigators should have been skeptical of [the complainant's] allegations because of the complainant's history of mental illness").  Accordingly, despite the SAC's new factual allegations as to what information defendants may have had about Mr. Liu, defendants still had probable cause to arrest plaintiff on the basis of Mr. Liu's complaining victim statement, plaintiff's violation of an active order of protection, and the I-Card.

## POINT III

### THE SAC FAILS TO ESTABLISH THE REQUISITE ELEMENTS FOR A MALICIOUS PROSECUTION CLAIM

10

Under New York State law, the elements of a malicious prosecution claim are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). Crucially, "the failure to establish any one of the four [elements] is fatal to the plaintiff's claim." Allen v. Antal, 12-CV-8024-NSR, 2014 U.S. Dist. LEXIS 79031 (S.D.N.Y. Mar. 13, 2014). To establish a §1983 malicious prosecution claim, plaintiff must also demonstrate conduct by the defendants that is tortious under state law that resulted in a constitutionally cognizable deprivation of plaintiff's liberty. Shabazz v. Kailer, 201 F. Supp. 3d 386, 391 (citing Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)).

## A.   Plaintiff Cannot Establish that Defendants Commenced or Continued a Criminal Proceeding Against Her

To establish the initiation or continuation element, plaintiff must show that defendants "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000). "A person who tells law enforcement authorities that he or she thinks that a crime has been committed and does no more, does not thereby put him- or herself at risk of liability for malicious prosecution should the arrest or prosecution later be abandoned or result in an acquittal." Id.

The SAC contains no factual allegations suggesting that defendants initiated or continued a proceeding against plaintiff. Rather, the SAC "merely offers 'labels and conclusions.'" Mayzick v. Cty. of Nassau, 32 F. Supp. 3d 399, 404 (E.D.N.Y. 2014) (quoting Iqbal, 556 U.S. at 678). Plaintiff alleges defendants, "with malicious intent, arrested [plaintiff] and initiated criminal proceedings despite that knowledge that [plaintiff had committed no

crime," and that defendants "deprived [her] of her liberty when they maliciously prosecuted her and subjected her to unlawful, illegal and excessive detentions, in violation of her [constitutional] rights."  (SAC at ¶¶ 177, 180)  These are precisely the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that federal courts routinely reject as sufficient to state a claim.  See Mayzick, 32 F. Supp. 3d at 404.  Accordingly, the SAC fails to establish the initiation element of plaintiff's malicious prosecution claims.

## B.   Plaintiff Cannot Establish that Probable Cause was Lacking for her Criminal Proceeding

Plaintiff's malicious prosecution claim fails because — as the Court held in its Order dismissing the FAC — probable cause existed for her prosecution.  (Mem. Op. & Order, DE 66, at 11)  As with plaintiff's false arrest claims, "the existence of probable cause to commence a proceeding is also a complete bar to a claim of malicious prosecution."  Bullard v. City of New York, 240 F. Supp. 2d 292, 297 (S.D.N.Y. 2003).  "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact."  Johnson v. Constantellis, 221 F. App'x 48, 50 (2d Cir. 2007) (internal quotation marks omitted).

The SAC offers no new factual allegations that warrant disturbing the Court's earlier conclusion — that probable cause existed for plaintiff's arrest and did not dissipate when her prosecution was commenced.  (See Mem. Op. & Order, DE  66, at 11)  Because the SAC fails to identify any facts that came to light between her arrest and prosecution that would vitiate probable cause, and for the reasons set forth in Point II, *supra*, defendants had probable cause to initiate the prosecution of plaintiff.

## C.   Plaintiff Cannot Establish Malice

"Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotation marks omitted). "Only where probable cause to initiate a proceeding is so totally lacking may malice reasonably be inferred."  Sulkowska v. City of New York, 129 F. Supp 2d 274, 295 (S.D.N.Y. 2001).

The SAC alleges that, prior to plaintiff's arrest, ACS employees visited plaintiff "to dissuade [her] from continuing her suit against ACS."  (SAC at ¶¶ 28–29)  Even assuming that allegation is true, it has no bearing on whether defendants initiated the prosecution of plaintiff with malice.  Plaintiff admits that Mr. Liu had a valid order of protection against her, (SAC at ¶ 23), that Mr. Liu made a complaining victim statement to police alleging that plaintiff had threatened to kill him, (id.), that an I-Card was activated for plaintiff's arrest, (id. at ¶ 24), and that that I-Card stated there was probable cause to arrest, (id., at Ex. B).  Because plaintiff admits the very facts that this Court held gave rise to probable cause for her prosecution, there is no basis for finding that defendants commenced plaintiff's prosecution with malice.  Accordingly, plaintiff's federal and state malicious prosecution claims should once again be dismissed.

## POINT IV

### PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO SUPPORT § 1983 OR STATE LAW CLAIMS FOR EXCESSIVE FORCE

The Fourth Amendment applies to an excessive force claim that "arises in the context of an arrest or investigatory stop of a free citizen."  Graham v. Connor, 490 U.S. 386, 394 (1989).  The standard is objective reasonableness, "which requires consideration of whether the individual officers acted in good faith or maliciously and sadistically for the very purpose of

causing harm." Id. at 396–97 (internal quotation marks omitted).  Critically, "[a] plaintiff must also demonstrate that the officer was made reasonably aware that the force used was excessive." Williams v. Amtrak, 830 F. App'x 46, 48–49 (2d Cir. 2020) (citing Cugini v. City of New York, 941 F.3d 604, 608 (2d Cir. 2019)).

## A.    Plaintiff Cannot Establish an Excessive Force Claim Based on Tight Handcuffing

Regarding tight handcuffing as a type of excessive force, the Second Circuit looks to whether the arrestee complains about the tightness of her handcuffs "as a significant factor, if not a prerequisite to liability." Cugini, 941 F.3d at 616; see also Arroyo v. City of New York, 683 F. App'x 73, 75 (2d Cir. 2017) (summary order).  District courts in this Circuit "'frequently consider (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists.'" Grytsyk v. Morales, 19-CV-3470-JMF, 2021 U.S. Dist. LEXIS 54642, at *29 (S.D.N.Y. Mar. 22, 2021) (quoting Gonzalez v. Hirschman, 15-CV-810-GHW, 2016 U.S. Dist. LEXIS 10228, at *4 (S.D.N.Y. Jan. 28, 2016)).  Additionally, "[i]t is well established in this Circuit that claims of excessive force are not established by allegations that overly tight handcuffs caused minor, temporary injuries." Id. at **29–30 (internal quotation marks and alterations omitted) (quoting Sullivan v. City of New York, 17-CV-3779-KPF, 2018 U.S. Dist. LEXIS 114366, at *10 (S.D.N.Y. July 10, 2018)).

In Grytsyk, the plaintiff alleged that defendant had "handcuffed [him] so tightly as to aggravate a pre-existing medical condition of his right hand, causing him an extremely painful injury and requiring him to seek medical attention." Id. at *30 (internal quotation marks and alterations omitted).  The Grytsyk Court dismissed the plaintiff's claim because there was "no allegation that [plaintiff] advised the officers of his discomfort, verbally or otherwise, or that he remained handcuffed for an extended period." Id.  The Court explained that "threadbare and

conclusory allegations of injury, without reference to specific physical injuries, do not suffice as a matter of law." Id.; see also Livigni v. Ortega, 15-CV-9454-CM, 2016 U.S. Dist. LEXIS 193496, at *4 (S.D.N.Y. Oct. 19, 2016) (dismissing excessive force claim where the plaintiff merely "allege[d] that his handcuffs were unreasonably tight, and that as a result he suffered a loss of circulation and that his wrists are chronically debilitated" but "d[id] not provide any more information about the extent of his alleged injuries, nor d[id] he allege that [the] [d]efendants ignored a request to loosen the handcuffs" (internal quotation marks omitted)).

Here, the SAC mentions "tight handcuffs" thrice, (SAC at ¶¶ 70, 152, 168), but does not contain allegations that plaintiff complained to defendants. In fact, the SAC contains even less factual detail than the plaintiff's allegations in Grytsyk: plaintiff does not claim to have sought medical attention or that she suffered any physical pain to her hands or wrists. Instead, plaintiff's excessive force claim amounts only to "threadbare and conclusory allegations . . . without reference to specific physical injuries." Grytsyk, 19-CV-3470-JMF, at *30. Accordingly, plaintiff's state and federal excessive force claims should be dismissed.

**B.    Plaintiff Fails to Allege Suffering Any Injury due to Being "Violently Dragged"**

Plaintiff's new allegation that she was "violently dragged" is insufficient to state a claim for excessive force. This Court has held more specific and more serious allegations to be insufficient. In a recent case in this District, the Court held a plaintiff's allegation that a defendant sprayed a chemical in plaintiff's face inadequate to state an excessive force claim because plaintiff did not provide "any additional information about the chemical sprayed, the context in which it was sprayed, or whether the chemical caused Plaintiff injury." Shepard v. Kelly, 2021 U.S. Dist. LEXIS 78337, at **12–13 (S.D.N.Y. Apr. 23, 2021). In the same case, the Court also held allegations that another defendant grabbed plaintiff's arm and punched

plaintiff in the back of the head insufficient because plaintiff failed to allege any injury.  Id. at *13.

Here, plaintiff does not elaborate whatsoever on her amended allegation that "Detective Febus and Officer Wiltshire violently dragged and transported [her] from Queens Boulevard to the 75th Precinct."  (SAC at ¶ 52)  Unlike the plaintiff in Shepard, who alleged that particular body parts had been injured (but whose excessive force claim was still dismissed), plaintiff fails to claim that she sustained any particular injuries due to allegedly being violently dragged.  To be sure, plaintiff alleges that she "sustained physical injuries, including fever, dizzy spells, and fainting," as well as "emotional injuries, including Post Traumatic Stress Disorder," but she attributes those to her alleged false arrest.  (Id. at ¶ 84)  Without more factual detail on how plaintiff was "violently dragged" and what injuries it caused, the SAC fails to state federal or state claims for excessive force.

## POINT V

### THE SAC FAILS TO STATE AN ABUSE OF CRIMINAL PROCESS CLAIM

"In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"  Savino, 331 F.3d at 76 (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)).  "[T]he New York Court of Appeals has made clear that '[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process.'"  Id. at 77 (alterations in original) (quoting Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984)).  To state a claim for abuse of criminal process, "a plaintiff must establish that the defendants had an improper *purpose* in instigating the action."  Id. (citing Dean v. Kochendorfer,

237 N.Y. 384 (1924)).   In other words, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against [her] by pursuing his arrest and prosecution. Instead, [the plaintiff] must claim that they aimed to achieve a collateral purpose beyond or in addition to [her] criminal prosecution."  Id.

Here, plaintiff's allegations amount at most to an insinuation of improper motive — not improper purpose — and are therefore insufficient to state a claim for abuse of criminal process.  Because plaintiff admits the facts that gave rise to probable cause for her arrest, see Point III.C, *supra*, she cannot establish that defendants aimed to achieve a collateral purpose in addition to her criminal prosecution.  Accordingly, plaintiff's abuse of criminal process claim should be dismissed.

### POINT VI

### THE SAC FAILS TO STATE A § 1983 CLAIM FOR DENIAL OF A FAIR TRIAL

The SAC contains virtually no factual detail to support a claim for denial of the right to a fair trial.  Construing the SAC liberally, it alleges a denial-of-fair-trial claim based on the fabrication of evidence.  To establish such a claim, a plaintiff must demonstrate that an "(1) investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) [that] the plaintiff suffer[ed] a deprivation of liberty as a result."  Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012).

First, plaintiff's denial-of-fair-trial claim fails because plaintiff does not allege what evidence, if any, defendants fabricated.  The SAC merely states the conclusory allegations that, "[b]y fabricating evidence, defendants violated [plaintiff's] constitutional right to a fair trial," and that "[d]efendants were aware or should have been aware of the falsity of the information used to prosecute plaintiff."  (SAC at ¶¶ 195–196)  The SAC never elaborates on

what information was false.  Moreover, the SAC does not allege that any defendant forwarded false evidence — let alone any particular evidence — to prosecutors.  Thus, the SAC fails to state all of the elements of a claim for denial of a fair trial.

Second, plaintiff admits to the only facts referenced in the complaint that could have been used to prosecute her.  Specifically, plaintiff admits that Mr. Liu had a valid order of protection against her, (SAC at ¶ 23), that Mr. Liu made a complaining victim statement to police alleging that plaintiff had threatened to kill him, (id.), that an I-Card was activated for plaintiff's arrest, (id. at ¶ 24), and that that I-Card stated there was probable cause to arrest, (id. at Ex. B).  Therefore, plaintiff cannot plausibly claim defendants fabricated any of those facts, and plaintiff's claim for denial of a fair trial should be dismissed.

## POINT VII

### THE SAC FAILS TO STATE A § 1983 CLAIM
### FOR DENIAL OF MEDICAL TREATMENT

"A pretrial detainee can state a claim for deliberate indifference to medical needs pursuant to § 1983 under the Fourteenth Amendment."  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  To establish such a claim, a "plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong."  King v. Falco, 16-CV-6315, 2018 U.S. Dist. LEXIS 208684, at *7 (S.D.N.Y. Dec. 11, 2018).  "Under the first prong, [a plaintiff's] medical needs must be objectively 'serious.'"  Paulin v. Town of New Windsor, 18-CV-06182-PMH, 2020 U.S. Dist. LEXIS 184170, at *16-17 (S.D.N.Y. Oct. 5, 2020) (citations omitted).  "Under the second prong, 'the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them.'"  Id. (quoting Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000)).  A plaintiff can show deliberate indifference by alleging facts demonstrating "that a defendant 'kn[e]w of and disregard[ed] an

excessive risk to [plaintiff's] health or safety.'" Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994))).

   The SAC fails to allege any facts that establish the elements of plaintiff's claim and only mentions particular physical injuries once: "fever, dizzy spells, and fainting." (SAC at ¶ 84)  Beyond that, the SAC contains only "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements," (id. at ¶¶ 206–213), which "do not suffice" to survive a motion to dismiss, see Iqbal, 556 U.S. at 678.  Far short of plausibly pleading an objectively serious injury — even if plaintiff could claim that these alleged physical injuries were "serious" — plaintiff makes no claim that any of the defendants even knew of these serious medical conditions and that they disregarded them.  Therefore, plaintiff's claim for denial of medical treatment should also be dismissed.

## POINT VIII

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

   Even if the Court finds the SAC contains factual allegations sufficient to warrant changing its conclusion that defendants had probable cause to arrest plaintiff, defendants are nonetheless entitled to qualified immunity.  Qualified immunity provides immunity from suit rather than just a defense to liability.  See, e.g., Lynch v. Ackley, 811 F.3d 569, 576 (2d Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  That "benefit is effectively lost if a case is erroneously permitted to go to trial."  Id.  Therefore, it is necessary that "qualified immunity questions be resolved at the earliest possible stage of litigation."  Saucier v. Katz, 533 U.S. 194, 201 (2001) (citation omitted).  The affirmative defense of qualified immunity sets a "high bar" for those seeking to challenge it, as the Supreme Court has firmly established that "qualified immunity 'gives ample room for mistaken judgments' and 'provides ample protection

to all but the plainly incompetent or those who knowingly violate the law.'"  Brown v. City of New York, 13-CV-1018-KBF, 2016 U.S. Dist. LEXIS 53365, at *17 (S.D.N.Y. Apr. 20, 2016) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)).  The Supreme Court has held that "clearly established law should not be defined at a high level of generality" but rather "must be particularized to the facts of the case."  White, 137 S. Ct. at 552 (internal quotation marks and citations omitted).

Furthermore, an officer is immune from a false arrest claim if there was arguable probable cause for the arrest.  Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir. 2013). Specifically, immunity attaches if "(a) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Id.  (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)).   To determine whether the officer's conduct was objectively reasonable, courts "look to the information possessed by the officer at the time of arrest."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010)).

As of January 31, 2018, there was no Supreme Court or Second Circuit law holding that it would be constitutionally impermissible for a police officer to arrest a suspect on the basis of (1) a complaining victim's statement that the suspect threatened his life, (2) the suspect's violation of an order of protection, and (3) the existence of an open I-Card.  To the

contrary, police officers may reasonably rely on a complaining victim's statement.  McIntosh, 722 F. App'x at 44.  Officers may also arrest a suspect based on a violation of an order of protection.  See Nansaram, 12-CV-5038, at **8–9 (finding the existence of probable cause as a matter of law and holding that plaintiff's "acknowledgment that an order of protection existed further corroborated [his wife's] allegations . . . which alone would be sufficient to establish probable cause for the arrest").  And arresting officers can rely on an I-Card as the basis for probable cause.  Watkins, 14-CV-7504-AJP, at *17.  Thus, it was reasonable for defendants to rely on (1) the complaining victim statement, (2) plaintiff's violation of the order of protection against her, and (3) the I-Card as bases for arresting plaintiff.  Accordingly, defendants are entitled to qualified immunity on all of plaintiff's claims.

**POINT IX**

**THE SAC FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY**

**A.    Plaintiff's _Respondeat Superior_ Claim is Barred by Monell**

To state a claim for municipal liability pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694–95 (1978), plaintiff must demonstrate "(1) a municipal policy or custom (2) that causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."  (Mem. Op. & Order dated May 7, 2021, DE  66, at 12) (citing Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 97–98 (2d Cir. 2020)).  Significantly, Monell expressly prohibits _respondeat superior_ liability for municipalities.  Monell, 436 U.S. at 691.  Hence, to establish municipal liability, plaintiff must demonstrate that "through its deliberate conduct, the municipality was the moving force behind the injury alleged."  Bd. Of Cnt. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997); Roe v. City of Waterbury, 542 F.3d 31, 40 (2d Cir. 2008).  Here, plaintiff bases her municipal liability claim on the state law doctrine of _respondeat superior_ — a claim that the

Supreme Court expressly barred in <u>Monell</u>.  For that reason alone, plaintiff's tenth cause of action should be dismissed.

**B.    The SAC Fails to State an Underlying Constitutional Violation**

Even if the Court construes plaintiff's municipal liability claim as arising under §1983 and <u>Monell</u>, that claim fails because the SAC fails to state a viable, underlying claim for a violation of plaintiff's constitutional rights.  Without an underlying violation, "there can be no municipal liability under § 1983."  <u>Simpson v. Town of Warwick Police Dep't.</u>, 159 F. Supp. 3d 419, 434 (S.D.N.Y. 2016) (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)); <u>see also</u> <u>Johnson v. City of New York</u>, 551 F. App'x 14, 15 (2d Cir. 2014) ("Because [the plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to <u>Monell</u> . . . must also fail.")).  As plaintiff fails to allege facts sufficient to support any underlying constitutional violation, any municipal liability claim must also fail.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants request that the Court dismiss the SAC in its entirety, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
           July 16, 2021

                                     GEORGIA M. PESTANA
                                     Acting Corporation Counsel
                                     of the City of New York
                                     *Attorney for Defendants City of New York, Gary*
                                     *DeNezzo, Danielle Febus, Erlene Wiltshire, and*
                                     *Irwin Luperon*
                                     100 Church Street
                                     New York, New York 10007
                                     (212) 356-3535

                                     _____
                                     Christopher D. DeLuca
                                     *Senior Counsel*
                                     Special Federal Litigation Division

cc:     **<u>BY ECF</u>**
        Xiamin Zeng
        110 Columbia Street, Apt. 1A
        New York, New York 10002