UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

XIAMIN ZENG,

                              Plaintiff,                    19-cv-3218 (JGK)

                — against —                            MEMORANDUM OPINION
                                                        AND ORDER
JOHN CHELL ET AL.,

                              Defendants.

———————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Xiamin Zeng, brought this pro se complaint
pursuant to 42 U.S.C. § 1983 and New York state law against
Detective Danielle Febus, Inspector John Chell, Detective Gary
DeNezzo, Sergeant George Tavares, Officer Irwin Luperon, Officer
Erlene Wiltshire, Officer Christopher Robley (collectively, the
"police officers"), and the City of New York (the "City"),
alleging false arrest and malicious prosecution. The defendants
move to dismiss the complaint for failure to state a claim
pursuant to Federal Rule of Civil Procedure 12(b)(6). For the
reasons stated below, the motion is **granted in part** and **denied
in part**.

                              I.
                              A.

     The following facts are drawn from the Second Amended
Complaint, ECF No. 68 ("SAC"), and the documents that it
incorporates by reference, including the Criminal Complaint and
the Temporary Order of Protection. See SAC ¶¶ 1, 78 n.2, 79. The

Court also takes judicial notice of the Complaint Report, the Temporary Order of Protection, the Activate Investigation Card ("I-Card"), and the Arrest Report, see De Angelis Decl. in Supp. of Mot. to Dismiss Exs. B–E, ECF Nos. 54-2 to –5, for the purposes of establishing their existence, their legal effect, and the statements they contained, but not for their truth.[1]

The plaintiff initiated this action on April 10, 2019. ECF No. 2. The plaintiff filed an amended complaint on July 9, 2020 (the "First Amended Complaint"). ECF No. 43. On May 7, 2021, in response to the defendants' motion, the Court dismissed the First Amended Complaint for failure to state a claim with leave to amend. See Zeng v. City of New York, No. 19-cv-3218, 2021 WL 1841683, at *1, *5 (S.D.N.Y. May 7, 2021) (the "Prior Decision"). On June 7, 2021, the plaintiff filed the Second Amended Complaint. ECF No. 68. The factual allegations described in the Prior Decision, Zeng, 2021 WL 1841683, at *1–2, are repeated only to the extent necessary here.

---

[1] See Liang v. City of New York, No. 10-cv-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (taking judicial notice of criminal complaints and orders of protection as matters in the public record, but considering them only to establish their existence and legal effect, or to determine what statements they contained, not for the truth of the matters asserted), aff'd sub nom. Liang v. Zee, 764 F. App'x 103 (2d Cir. 2019); Wims v. N.Y. City Police Dep't., No. 10-cv-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments and criminal disposition data."). But see Alvarez v. Cnty. of Orange, 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015) (collecting cases in which courts declined to take judicial notice of such documents). In contrast, because it is not a matter of public record, the Court does not rely on the 50-h hearing testimony. See Bissinger v. City of New York, No. 06-cv-2325, 2007 WL 2826756, at *2 n.1 (S.D.N.Y. Sept. 24, 2007).

**B.**

The plaintiff, Ms. Zeng, alleges that on January 13, 2017, Gang Liu, the plaintiff's ex-boyfriend and the father of her child, entered a police precinct and reported that he had received a threatening phone call from the plaintiff. The Complaint Report reflecting the encounter notes that Mr. Liu had in place a temporary order of protection against the plaintiff. On January 14, 2017, an Activate Investigation Card ("I-Card") on the plaintiff was issued, stating that Ms. Zeng was "[s]ought as perpetrator — probable cause to arrest" for criminal contempt in the first degree.

In the Second Amended Complaint, the plaintiff identifies the officer to whom Mr. Liu made the complaint and who activated the I-Card as Officer Robley. The plaintiff further alleges that Mr. Liu "posted a rambling blog post in which he accuse[d]" the plaintiff "of being a Chinese spy sent by the Chinese government to come to New York to convert him into a Chinese spy, and, using her connections within the NYPD, having Mr. Liu falsely arrested several times." The plaintiff alleges that Mr. Liu "has a long-documented history of mental illness and is extremely delusional," and has been "appointed a custodian guardian." The plaintiff includes a link to a Wikipedia page that she alleges is about her ex-boyfriend.

On December 20, 2017, the plaintiff initiated a distinct lawsuit against Dana Augustin and others related to injuries allegedly sustained by her son during a supervised visitation with Mr. Liu, in the office of a social worker employed by the Administration for Children's Services ("ACS") / Child Protective Services ("CPS") (the "Augustin Action").

On January 18, 2018, the plaintiff contacted the New York Child Abuse Hotline to inquire about the status of her case. In response, two ACS employees, under the direction of ACS/CPS case manager Diego Adrianzen, visited the plaintiff later that night. The plaintiff alleges that the purpose of this visit was to dissuade her from continuing the Augustin Action. The plaintiff claims that between January 19 and January 30, 2018, Mr. Adrianzen and Detective Febus threatened and intimidated the plaintiff and various people associated with her.

On January 31, 2018, the plaintiff received a text message informing her that her son was at the Queens Child Abuse Squad and asking her to pick him up. When she arrived, Mr. Adrianzen and Detective Febus held and searched the plaintiff. The defendants "told Ms. Zeng that her lawsuit would require witnesses to come forward, which would cause trouble for them, and, as such, Ms. Zeng should dismiss her suit." SAC ¶ 40. The defendants "asked Ms. Zeng questions like: 'Why are you suing ACS?' 'Who helped you file the lawsuit?' 'Who is your lawyer?'

4

'Who lives with you?' and 'What is your immigration status?'"
SAC ¶ 41. The plaintiff repeatedly asked to see her lawyer, but
her requests were ignored.

After she had been held for approximately seven hours,
Detective Febus and Officer Wiltshire handcuffed the plaintiff
and "violently dragged" her to the 75th precinct. SAC ¶¶ 51-52.
Once there, the plaintiff was uncuffed and questioned by
Inspector Chell. Inspector Chell continued to question the
plaintiff about the Augustin Action. The plaintiff was left in
the examination room for several hours, then once more tightly
handcuffed and brought to a holding cell for several more hours.

Officers then took Ms. Zeng's fingerprints and transported
her to Kings County Criminal Court, where she was held until 6
a.m. on February 1, 2018, at which point she met with a public
defender. The plaintiff claims that throughout her detention,
her requests for water and food and to use the restroom were
denied.

The plaintiff was charged with several counts of contempt
and harassment and released. The plaintiff acknowledges that the
"supposed" reason for her arrest was the breach of the
restraining order involving Mr. Liu in January 2017. SAC ¶ 79.
Ultimately, all the charges against the plaintiff were
dismissed. The plaintiff alleges that as a result of her arrest,
she sustained physical and emotional injuries, including fever,

5

dizzy spells, fainting, and post-traumatic stress disorder, and that she incurred various costs.

The plaintiff claims that the customs, policies, usages, practices, procedures, and rules of the City and the NYPD were the direct and proximate cause of the violations suffered by the plaintiff. As evidence of the existence of these customs, policies, and practices, the plaintiff cites in both the First and Second Amended Complaints certain orders and lawsuits relating to arrests. In her Second Amended Complaint, the plaintiff supplements these allegations with links to several articles noting allegations of force-related misconduct by the defendant officers and other officers in the precinct.

The Second Amended Complaint names all of the same defendants as the First Amended Complaint, as well as Officer Robley. The First Amended Complaint brought claims under both New York state law and 42 U.S.C. § 1983 for false arrest and malicious prosecution. The Second Amended Complaint repeated those claims, and also brought claims under § 1983 for excessive force, denial of a fair trial, abuse of criminal process, and denial of medical treatment, and under state law for excessive force. The defendants now move to dismiss the SAC.

## C.

In her opposition, the plaintiff raises new allegations, and asks that the Court consider them. While the Court has

discretion to consider allegations in an opposition by a pro se
plaintiff, it will not exercise that discretion in this case.
The plaintiff has already had two opportunities to amend her
complaint. Despite this, the allegations that appear in the
opposition appear in none of the three complaints the plaintiff
has filed with the Court. The Court will not allow the plaintiff
to further amend her complaint "through statements made in
motion papers." D'Alessandro v. City of New York, 713 F. App'x
1, 11 n.12 (2d Cir. 2017). For these reasons, the Court does not
consider the allegations raised in the opposition. See Guity v.
Uniondale Union Free Sch. Dist., No. 15-cv-5693, 2017 WL
9485647, at *23 n.16 (E.D.N.Y. Feb. 23, 2017), report and
recommendation adopted, No. 15-cv-5693, 2017 WL 1233846
(E.D.N.Y. Mar. 31, 2017).

### D.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the

plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

## II.

### A. False Arrest, Malicious Prosecution, and Denial of a Fair Trial

The plaintiff brings claims for false arrest and malicious prosecution under § 1983 and state law, and deprivation of the right to a fair trial under § 1983. The plaintiff has failed to plead sufficient facts to state a plausible claim for relief. The plaintiff also alleges municipal liability based on these alleged violations, but this claim also fails.

### 1.

As she did in her First Amended Complaint, the plaintiff brings claims for false arrest and malicious prosecution under both state law and § 1983. As to these claims, the Second Amended Complaint largely restates the allegations of the First Amended Complaint. Accordingly, those claims are dismissed for substantially the same reasons given in the Prior Decision. See Zeng, 2021 WL 1841683, at *3-4. In summary, those reasons are that Mr. Liu's allegations provided probable cause given Mr. Liu's allegation that the plaintiff threatened him and the

9

undisputed existence of an order of protection in favor of Mr. Liu. The collective knowledge doctrine allowed the arresting officers to rely on the I-Card, even though the I-Card itself did not explain the reasons for the probable cause. See id. Because probable cause defeats false arrest and malicious prosecution claims under both state law and § 1983, the plaintiff has not stated claims for false arrest or malicious prosecution under either state law or § 1983. Id.

The additional facts the plaintiff alleges in the Second Amended Complaint do not call into question the existence of probable cause. The plaintiff alleges certain facts relating to Mr. Liu's mental health. However, even if Mr. Liu's mental instability would have been a sufficient reason to disregard his statement, the plaintiff does not allege that the officers were or should have been aware of the complaining victim's alleged mental instability, and there was an undisputed order of protection in favor of Mr. Liu against the plaintiff. The plaintiff's additional allegations therefore do not undermine the existence of probable cause. "[P]olice officers, when making a probable cause determination, are entitled to rely on the victim['s] allegations that a crime has been committed," Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000), "unless the circumstances raise doubt as to the person's veracity." Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). An

officer is not required to independently confirm allegations by
an eyewitness or victim in order to have probable cause. See
Pierre v. City of New York, No. 05-cv-5018, 2007 WL 2403573, at
*8 (E.D.N.Y. Aug. 17, 2007). The plaintiff does not allege that
the circumstances should have raised a doubt as to the veracity
of Mr. Liu's accusations in the mind of Officer Robley, and
Officer Robley was not required to inquire into the complaining
victim's mental health in order to have probable cause.
Accordingly, there was probable cause, and the plaintiff's
claims for false arrest and malicious prosecution under both
state law and § 1983 are dismissed.

**2.**

The plaintiff also alleges that she was deprived of her
right to a fair trial. Deprivation of the right to a fair trial
occurs "when a police officer fabricates and forwards evidence
to a prosecutor that would be likely to influence a jury's
decision, were that evidence presented to the jury," and a
deprivation of liberty results. Frost v. N.Y. City Police Dep't,
980 F.3d 231, 250 (2d Cir. 2020).

The plaintiff's claim fails in three respects. First, she
has failed to plead any fabrication of evidence. She alleges
generically that the defendants falsified evidence, a conclusory
recitation that cannot support her claim. Cf. Harasz v. Katz,
327 F. Supp. 3d 418, 445-47 (D. Conn. 2018). But she fails to

11

explain the allegedly false information that was forwarded by
the police officers. She also alleges that the defendants "were
aware or should have been aware of the falsity of the
information used to prosecute" her. SAC ¶ 196. But the plaintiff
alleges no facts that would support this inference. Second, the
plaintiff does not allege the active participation of any
officer in passing along the allegedly fabricated information.
See Israel v. City of New York, No. 16-cv-6809, 2018 WL
11219076, at *7 (S.D.N.Y. Sept. 29, 2018). Third, the plaintiff
does not allege any deprivation of liberty that resulted from
fabricated evidence being forwarded to a prosecutor. While the
plaintiff alleges that she was detained, that detention was
effected by police officers, prior to the plaintiff's
arraignment. The plaintiff was released promptly on arraignment,
and because the charges were dismissed, there is no allegation
that the plaintiff was deprived of liberty by being required to
return to court. Cf. Polanco v. City of New York, No. 14-cv-
7986, 2018 WL 1804702, at *11 n.11 (S.D.N.Y. Mar. 28, 2018). For
these reasons, the plaintiff has not stated a claim for
deprivation of the right to a fair trial.

**3.**

As she did in her First Amended Complaint, the plaintiff
also argues that the City is liable for these alleged
violations. Liberally construed, the complaint seeks municipal

12

liability pursuant to Monell v. Department of Social Services,
436 U.S. 658, 694-95 (1978), for violation of the plaintiff's
rights under § 1983. The elements of a municipal liability claim
under Monell are "(1) a municipal policy or custom that (2)
causes the plaintiff to be subjected to (3) the deprivation of a
constitutional right." Agosto v. N.Y. City Dep't of Educ., 982
F.3d 86, 97-98 (2d Cir. 2020). The plaintiff also seeks to hold
the City liable under state law on a respondeat superior theory
for her claims of false arrest, malicious prosecution, and
denial of a fair trial. These claims fail.

First, as noted in the Prior Decision, see Zeng, 2021 WL
1841683, at *5, there can be no municipal liability under § 1983
without an underlying violation. See Simpson v. Town of Warwick
Police Dep't, 159 F. Supp. 3d 419, 434 (S.D.N.Y. 2016).
Similarly, New York law allows for respondeat superior liability
against a municipality only where there is some underlying
liability. See Fiedler v. Incandela, 222 F. Supp. 3d 141, 169
(E.D.N.Y. 2016). For the reasons explained above, the plaintiff
has not alleged an underlying violation under either state law
or § 1983 on her claims of false arrest, malicious prosecution,
and denial of a fair trial. The City is therefore not liable on
these claims.

Second, the plaintiff has not adequately alleged a policy
or custom. For the reasons given in the Prior Decision, Zeng,

2021 WL 1841683, at *4-5, the plaintiff has not adequately alleged a policy or custom of false arrests or malicious prosecutions. Likewise, the plaintiff's allegations do not give rise to an inference that the municipality had a policy or custom of denying individuals the right to a fair trial. A plaintiff cannot plead a policy or custom merely on the basis of the plaintiff's own violation. See, e.g., Dyno v. Village of Johnson City, 240 F. App'x 432, 434 (2d Cir. 2007). Accordingly, the plaintiff has not alleged a pattern of constitutional violations "so widespread as to have the force of law." See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).

For both of these reasons, the plaintiff's claims for municipal liability in connection with her § 1983 and state law claims for false arrest, malicious prosecution, and denial of a fair trial are dismissed.

### B. Excessive Force and Assault and Battery

The plaintiff also brings claims under § 1983 and state law for excessive force. Liberally construed, her state law excessive force claim is an assault and battery claim.

### 1.

To state a claim under 42 U.S.C. § 1983 for excessive force, a plaintiff must allege a use of force that was objectively unreasonable, Graham v. Connor, 490 U.S. 386, 397

14

(1989), and greater than de minimis. Kaplan v. Cnty. of Orange, 528 F. Supp. 3d 141, 170-71 (S.D.N.Y. 2021). The test for whether a plaintiff can maintain state law assault and battery causes of action against law enforcement officials is generally the same as the one used to analyze a Fourth Amendment excessive force claim. See Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013).

In this case, the plaintiff alleges that Detective Febus and Inspector Chell handcuffed the plaintiff too tightly. See Compl. ¶¶ 51, 70, 152, 168. While this allegation without more may be insufficient, see, e.g., Jouthe v. City of New York, No. 05-cv-1374, 2009 WL 701110, at *14 (E.D.N.Y. Mar. 10, 2009) (collecting cases), the plaintiff also alleges that Officer Wiltshire and Detective Febus "violently dragged" the plaintiff to the precinct. Id. ¶ 52. Because there is no indication that the plaintiff was resisting or that there was any other reason for the use of any force, those allegations are sufficient to state a claim for excessive force against defendants Febus and Wiltshire. See, e.g., Kaplan, 528 F. Supp. 3d at 170-71; Lozada v. Weilminster, 92 F. Supp. 3d 76, 93-95 (E.D.N.Y. 2015); Nicholas v. City of Binghamton, No. 10-cv-1565, 2012 WL 3261409 (N.D.N.Y. Aug. 8, 2012). Similarly, the allegations of excessive force are sufficient to allege state law claims for assault and

battery against those defendants. See Kaplan, 528 F. Supp. 3d at 173.[2]

However, the excessive force and assault and battery claims against the other defendants fail. The excessive force and assault and battery claims against defendants DeNezzo, Tavares, Luperon, and Robley fail because the plaintiff has not alleged their personal involvement. To be liable under § 1983, a defendant must have some personal involvement in the constitutional violation. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Likewise, under New York law, an assault and battery claim against an officer requires that the officer had some physical contact with the plaintiff. See Wyllie v. Dist. Atty. of Cnty. of Kings, 770 N.Y.S.2d 110, 114 (App. Div. 2003). Because the plaintiff does not allege any acts of excessive force by any defendant other than defendants Febus, Chell, and Wiltshire, the excessive force and assault and battery claims against defendants DeNezzo, Tavares, Luperon, and Robley fail. And the excessive force and assault and battery claims against Inspector Chell fail because the complaint alleges only that Inspector Chell handcuffed the plaintiff without any factual allegations to indicate that the handcuffing was anything more than routine, and this allegation is insufficient. See, e.g.,

---

[2] The Court could not conclude on the basis of the plaintiff's allegations that Officer Wiltshire and Detective Febus are entitled to qualified immunity for violently dragging the plaintiff to the precinct.

Jouthe, 2009 WL 701110, at *14; Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).

**2.**

As with the plaintiff's other claims, liberally construed, the complaint seeks municipal liability pursuant to Monell for violation of the plaintiff's right to be free from excessive force. However, while the plaintiff has alleged an underlying violation with respect to this claim, the plaintiff's allegations do not give rise to an inference that the municipality had a policy or custom of excessive force. Several of the articles to which the plaintiff links refer to the same case. Alleging one instance of excessive force beyond the plaintiff's own experience does not amount to an allegation that there is a "custom" of excessive force that caused the excessive force against the plaintiff. The other articles do not specifically identify other instances of conduct from which the Court could infer a pattern of violations akin to the violations the plaintiff alleges. Accordingly, the plaintiff has not alleged a pattern of constitutional violations "so widespread as to have the force of law," see Brown, 520 U.S. at 404, and the plaintiff cannot maintain an excessive force claim against the City under § 1983.

However, New York law does not require a plaintiff to show that a municipality had a "policy or custom" of similar

constitutional violations to hold the municipality liable on a respondeat superior theory. Graham v. City of New York, 928 F. Supp. 2d 610, 626 (E.D.N.Y. 2013). Accordingly, the plaintiff's state law assault and battery claims against the City survive.

### C. Unconstitutional Conditions of Confinement

The plaintiff brings a claim for denial of medical treatment pursuant to § 1983. Liberally construed, this is a claim for deliberate indifference to unconstitutional conditions of confinement. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). Under the Due Process Clause of the Fourteenth Amendment, arrestees have a right to be free from deliberate indifference to unconstitutional conditions of confinement. See id. To state a claim for deliberate indifference, the plaintiff must satisfy two elements: an "objective" element and a "mental" element. See id. First, the plaintiff must allege an "objective" element, which requires a showing that the conditions she suffered in confinement were sufficiently serious. Id. Second, the plaintiff must allege a "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. See id. at 29-31, 35.

The plaintiff has adequately alleged the objective element. The plaintiff alleged that she was deprived of food, water, and the use of a toilet for 26 hours. The plaintiff further alleges that she suffered certain medical issues, including "fever,

dizzy spells, and fainting." Compl. ¶ 84. Courts have found that denials of food, water, and the use of a toilet, even if temporary, can represent an objectively serious condition. Darnell, 849 F.3d at 23, 36–38; Cano v. City of New York, 44 F. Supp. 3d 324, 333–34 (E.D.N.Y. 2014); Boadi v. City of New York, No. 12-cv-2456, 2012 WL 3062063, at *4 (E.D.N.Y. July 26, 2012). The plaintiff has therefore alleged an objectively serious condition, especially when combined with the plaintiff's allegations of physical consequences that she suffered as a result of these deprivations.

The plaintiff has also alleged the mental element. In the context of claims for unconstitutional conditions of confinement under the Fourteenth Amendment's Due Process clause, "deliberate indifference" means that "the defendant-official acted intentionally . . ., or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 29, 35. The plaintiff alleged that she asked Detective Febus and Inspector Chell for food, water, and to use the restroom, thereby apprising them of her need, and permitting an inference that the defendants were deliberately indifferent to that need. See Cano, 44 F. Supp. 3d at 334; see also Darnell, 849 F.3d at 35.

Because the plaintiff alleges the personal involvement only of Detective Febus and Inspector Chell in causing the plaintiff's unconstitutional conditions of confinement, the deliberate indifference claims against the other defendants are dismissed. Detective Febus and Inspector Chell are not entitled to qualified immunity on this claim, because it is clearly established in the Second Circuit that conditions such as those alleged are unconstitutional. See, e.g., id. at 36-38.

The City is not liable for this claim. The plaintiff has not adequately alleged a policy or custom of unconstitutional conditions of confinement: none of the articles to which the plaintiff links identify instances of deprivations of food, water, using the restroom, or ignoring medical needs like fevers or fainting, and the plaintiff's complaint alleges no other instance of such conduct. A plaintiff cannot plead a policy or custom merely on the basis of the plaintiff's own violation. Dyno, 240 F. App'x at 434. Accordingly, the plaintiff has not alleged a pattern of constitutional violations "so widespread as to have the force of law," see Brown, 520 U.S. at 404, and the claims against the City for deliberate indifference to unconstitutional conditions of confinement under § 1983 are dismissed.

### D. **Abuse of Criminal Process**

The plaintiff also brings a claim under § 1983 for deprivation of the right to be free from abuse of criminal process against the individual defendants and the City.[3] Abuse of criminal process exists where a defendant "[i] employ[s] regularly issued legal process to compel performance or forbearance of some act, [ii] with the intent to do harm without excuse or justification, and [iii] in order to obtain a collateral objective that is outside the legitimate ends of the process." Corley v. Vance, 365 F. Supp. 3d 407, 442 (S.D.N.Y. 2019), aff'd sub nom. Corley v. Wittner, 811 F. App'x 62 (2d Cir. 2020). The plaintiff appears to allege that she was arrested and charged in order to persuade her to drop the Augustin Action.

The plaintiff's claim against the individual defendants for malicious abuse of process is barred by qualified immunity. "[W]hen an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," suit against that official is barred by qualified immunity. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). The Court of Appeals for the Second Circuit held in Mangino v. Incorporated Village of Patchogue, 808 F.3d

---

[3] The plaintiff does not bring a claim for abuse of criminal process under state law.

21

951 (2d Cir. 2015), that "it was not clearly established that
. . . [a claim for abuse of process] could exist even where
probable cause existed for the issuance of the summonses," and
granted the defendants qualified immunity. Id. at 958-59. Nor
have subsequent decisions by that court clearly established that
principle. See, e.g., Tuccillo v. Cnty. of Nassau, 723 F. App'x
81, 82-83 (2d Cir. 2018); McIntosh v. City of New York, 722 F.
App'x 42, 44 (2d Cir. 2018); Pulk v. Winter, 722 F. App'x 36, 39
(2d Cir. 2018). Accordingly, it was not clearly established that
the plaintiff's arrest which was based on probable cause was an
abuse of process, and the individual defendants are entitled to
qualified immunity.

The plaintiff's claim for municipal liability against the
City on the basis of malicious abuse of process also fails
because, as with her other claims for municipal liability, the
plaintiff has not alleged a policy or custom that caused her
alleged violation. The plaintiff's complaint does not allege any
other instance of abuse of process from which the Court could
infer a pattern. See Santos v. New York City, 847 F. Supp. 2d
573, 576 (S.D.N.Y. 2012); Dyno, 240 F. App'x at 434. Because
there is no municipal policy or custom that the plaintiff
alleges caused the malicious abuse of process, the claim for
municipal liability also fails.

### III.

All of the claims against Officer Robley, other than those under § 1983 for malicious prosecution and denial of a fair trial, fail for the additional reason that they are untimely.[4]

### A.

In § 1983 actions, "courts apply the statute of limitations for personal injury actions under state law." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). In New York, the applicable statute of limitations is three years. Id.

However, the accrual date of the claim is governed by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007). And, under federal law, a claim accrues when a plaintiff "knows or has reason to know of the injury which is the basis of [the] action." Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980).

For the plaintiff's claims of false arrest, excessive force, and deliberate indifference to unconstitutional conditions of confinement, that date is January 31, 2018, the date that Ms. Zeng alleges that she was detained, dragged, and handcuffed, and that she requested and was denied medical treatment. See Wallace, 549 U.S. at 397 (false arrest); Mitchell

---

[4] The defendants do not argue that the claims against Officer Robley under § 1983 for malicious prosecution or denial of a fair trial are untimely, acknowledging that those claims accrue at the time of a disposition favorable to the plaintiff — in this case, the June 14, 2018 dismissal of the outstanding charges against Ms. Zeng. See Panetta v. Cassel, No. 7:20-cv-2255, 2020 WL 2521533, at *4 (S.D.N.Y. May 18, 2020).

v. Kugler, No. 07-cv-1801, 2009 WL 160798, at *6 (E.D.N.Y. Jan. 23, 2009) (excessive force); Williams v. Koenigsmann, No. 14-cv-2498, 2021 WL 918769, at *4 (S.D.N.Y. Mar. 10, 2021) (denial of medical treatment). The statute of limitations therefore expired for those claims on January 31, 2021.

For a claim of abuse of process, the date of accrual is the date "the criminal process is set in motion — typically at arrest," but no earlier than "such time as plaintiff is aware, or ought to be aware, of those facts providing a basis for his claim." Hagans v. Nassau Cty. Police Dep't, No. 18-cv-1918, 2020 WL 1289529, at *5 (E.D.N.Y. Mar. 18, 2020). Accordingly, such a claim accrues at the latest on the date of release. See id. Because the plaintiff was arraigned and released on February 1, 2018, that date is the latest date on which her claim could have accrued. See id. The statute of limitations therefore expired for that claim on February 1, 2021.

**B.**

The defendants also argue that all of the plaintiff's state law claims are barred by the statute of limitations. The limitations periods and accrual dates for state law claims are governed by state law. Lynch v. Suffolk Cnty. Police Dep't, Inc., 348 F. App'x 672, 675-76 (2d Cir. 2009).

The plaintiff brings claims under state law against Officer Robley for false arrest, excessive force, and malicious

prosecution. Liberally construed, the plaintiff's state law claim for excessive force is in fact an assault and battery claim. Under New York state law, all of these have a statute of limitations of one year. N.Y. CPLR § 215(c).

Under New York law, false arrest claims "accrue upon the subject's release from confinement." Bellissimo v. Mitchell, 995 N.Y.S.2d 603, 605 (App. Div. 2014). The plaintiff's false arrest claim therefore accrued on February 1, 2018, and fell outside the statute of limitations on February 1, 2019.

Claims for assault and battery accrue on the date of the incident. Sawyer v. Wight, 196 F. Supp. 2d 220, 228 (E.D.N.Y. 2002). The plaintiff's assault and battery claim therefore accrued on January 31, 2018, and fell outside the statute of limitations on January 31, 2019.

Claims for malicious prosecution accrue on a favorable termination. Boose v. City of Rochester, 421 N.Y.S.2d 740, 746 (App. Div. 1979). The plaintiff's malicious prosecution claim therefore accrued on the dismissal of the charges against her on June 14, 2018, and fell outside the statute of limitations on June 14, 2019.

## C.

The Second Amended Complaint which first named Officer Robley was filed on June 7, 2021. Accordingly, all of the plaintiff's claims against Officer Robley, other than the claims

25

under § 1983 for malicious prosecution and denial of a fair trial, fall outside of the statute of limitations.

However, a claim in an amended pleading may be timely despite the expiration of the statute of limitations if it "relates back" to a timely filed original pleading. See Hogan, 738 F.3d at 517. Federal Rule of Civil Procedure 15(c)(1) provides the standard for relation back.

### 1. Rule 15(c)(1)(C)

Rule 15(c)(1)(C) provides the federal standard for adding new parties:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted, if [the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading, and if] . . . the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

See also Hogan, 738 F.3d at 517.

The Court of Appeals for the Second Circuit has held that not naming a defendant in a complaint due to "lack of knowledge" as opposed to mistake of identity does not satisfy the requirements of Rule 15(c)(1)(C). Id. at 518. In this case, the plaintiff did not misname Officer Robley in the Complaint or First Amended Complaint, but rather failed to name him entirely.

26

This constitutes at most lack of knowledge, not mistake of identity, and defeats relation back under Rule 15(c)(1)(C).

## 2. Rule 15(c)(1)(A)

Rule 15(c)(1)(A) additionally provides for relation back where "the law that provides the applicable statute of limitations allows relation back." The Court of Appeals for the Second Circuit has held that this provision directs courts to apply state relation-back law to all claims where a state statute of limitations applies — including § 1983 claims. Hogan, 738 F.3d at 518. New York C.P.L.R. § 203(b) allows relation back for claims against a new part where the two defendants are "united in interest." More specifically, New York authorizes relation back against a new defendant where:

> (1) [B]oth claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for a[] . . . mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

Buran v. Coupal, 661 N.E.2d 978, 981–83 (N.Y. 1995). Federal courts in this circuit have typically construed the "mistake" requirement under Buran as coterminous with the mistake requirement under Rule 15(c)(1)(C), see, e.g., Sosa v. Bustos, No. 17-cv-417, 2020 WL 1940550, at *7–8 (S.D.N.Y. Apr. 22, 2020), meaning that the plaintiff's claims would be not relate

27

back under Rule 15(c)(1)(A) because, as under Rule 15(c)(1)(C), the plaintiff's ignorance of Officer Robley's identity is not a "mistake."

Moreover, even to the extent state courts have construed the word "mistake" more broadly, see, e.g., NYAHSA Servs., Inc. v. People Care Inc., 91 N.Y.S.3d 528, 530-31 (App. Div. 2018); see also DaCosta v. City of New York, 296 F. Supp. 3d 569, 587-88 (E.D.N.Y. 2017) (Weinstein, J.), in this case, the previous complaints did not challenge the issuance of the I-Card in 2017. The plaintiff simply failed to allege a claim based on that incident. That omission defeats any semblance of notice to Officer Robley, which the New York Court of Appeals has recognized as the "'linchpin' of the relation back doctrine." Buran, 661 N.E.2d at 983; see also Shapiro v. Good Samaritan Reg'l Hosp. Med. Ctr., 840 N.Y.S.2d 94, 95-96 (App. Div. 2007).

Accordingly, the claims against Officer Robley other than claims for malicious prosecution and denial of a fair trial under § 1983 are dismissed for the additional reason that they are untimely.

## IV.

The plaintiff has already filed three complaints, including one after the Court explained the deficiencies in the prior complaint. Despite this, the plaintiff has continued to allege meritless claims against numerous defendants. The plaintiff

should not be permitted another opportunity to file another complaint. See Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A., 849 F. App'x 289, 295 (2d Cir. 2021). The plaintiff's request for leave to amend her complaint is denied.

### Conclusion

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted in part** and **denied in part**. The Clerk is directed to close all pending motions, to mail a copy of this Memorandum Opinion and Order to the pro se plaintiff, and to note service in the docket.

**SO ORDERED.**
**Dated:**    **New York, New York**
        **March 1, 2022**

John G. Koeltl
United States District Judge

29