19 Civ. 3218 (JGK) (KHP)

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

XIAMIN ZENG,

Plaintiff,

-against-

CITY OF NEW YORK and DETECTIVE DANIELLE
FEBUS,

Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

---

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*

*Of Counsel:  Jeffrey F. Frank*
*Tel:  (212) 356-3541*

*Date of Service:  March 10, 2023*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................... III

PRELIMINARY STATEMENT ................................................. 1

STATEMENT OF FACTS ....................................................... 1

STANDARD OF REVIEW ...................................................... 4

ARGUMENT

    POINT I

        DETECTIVE FEBUS DID NOT USE EXCESSIVE
        FORCE TO ARREST PLAINTIFF ................................. 5

        A. Plaintiff's Excessive Force Claim is Belied by the
           Objective Evidence. ...................................... 5

        B. Plaintiff's Excessively Tight Handcuffing Claim
           Fails....................................................... 9

    POINT II

        PLAINTIFF'S DELIBERATE INDIFFERENCE
        CLAIM FAILS AS A MATTER OF LAW .................. 11

        A. Plaintiff Did Not Have an Objectively Serious
           Medical Need .......................................... 11

        B. Plaintiff Did Not Suffer Unconstitutional
           Conditions of Confinement............................. 13

    POINT III

        DEFENDANTS ARE ENTITLED TO QUALIFIED
        IMMUNITY ON ALL OF PLAINTIFF'S CLAIMS ................. 15

    POINT IV

        THE ASSAULT AND BATTERY CLAIMS FAIL................... 17

    POINT V

        THE COURT SHOULD DECLINE TO EXERCISE
        SUPPLEMENTAL JURISDICTION ....................... 19

**Page**

CONCLUSION.................................................................................................................. 20

CERTIFICATE OF COMPLIANCE ............................................................................... 21

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                     <u>**Pages**</u>

*Anderson v. Creighton*,
   483 U.S. 635 (1987) .......................................................................................................15

*Arnold v. Westchester Cty.*,
   09-CV-3727-JSR-GWG, 2012 U.S. Dist. LEXIS 12992
   (S.D.N.Y. Feb. 3, 2012) ........................................................................................... 10-11

*Ashcroft v. al-Kidd*,
   563 U.S. 73 (2011) .........................................................................................................15

*Barratt v. Joie*,
   96-CV-0324-LTS, 2002 U.S. Dist. LEXIS 3453
   (S.D.N.Y. Mar. 4, 2002) .................................................................................................11

*Benbow v. City of New York*,
   17-CV-06457-EK-JRC, 2022 U.S. Dist. LEXIS 157815
   (E.D.N.Y. Aug. 31, 2022) ...............................................................................................18

*Bender v. City of New York*,
   09-CV-3286-BSJ, 2011 U.S. Dist. LEXIS 103947
   (S.D.N.Y. Sept. 14, 2011) ...............................................................................................11

*Berg v. Kelly*,
   897 F.3d 99 (2d Cir. 2018) .............................................................................................17

*Boadi v. City of New York*,
   12-CV-2456-BMC 2012 U.S. Dist. LEXIS 104652
   (E.D.N.Y. July 24, 2012) ........................................................................................... 13-14

*Bourdon v. Roney*,
   99-CV-0769-LEK-GLS, 2003 U.S. Dist. LEXIS 3234
   (N.D.N.Y. Mar. 6, 2003) ...........................................................................................14, 15

*Brady v. Town of Colchester*,
   863 F.2d 205 (2d Cir. 1988) .............................................................................................4

*Brosseau v. Haugen*,
   543 U.S. 194 (U.S. 2004) ...............................................................................................16

*Cano v. City of New York*,
   44 F. Supp. 3d 324 (E.D.N.Y. 2014) .............................................................................13

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) .......................................................................................................19

**Cases**                                                                                          **Pages**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................4

*Chance v. Armstrong*,
    143 F.3d 698 (2d Cir. 1998)....................................................................................12

*Coollick v. Hughes*,
    699 F.3d 211 (2d Cir. 2012)....................................................................................16

*Crawford v. Franklin Credit Mgmt.*,
    758 F.3d 473 (2d Cir. 2014)......................................................................................4

*Cugini v. City of New York*,
    941 F.3d 604 (2d Cir. 2019)....................................................................................17

*D'Attore v. New York City*,
    10-CV-3102-JSR-MHD, 2014 U.S. Dist. LEXIS 181939
    (S.D.N.Y. Sep. 24, 2014)........................................................................................14

*Darnell v. Pineiro*,
    849 F.3d 17 (2d Cir. 2017)......................................................................................12

*Davis v. Klein*,
    11-CV-4868-ENV, 2013 U.S. Dist. LEXIS 153469
    (E.D.N.Y. Oct. 17, 2013)..........................................................................................9

*Dollard v. City of New York*,
    408 F. Supp. 3d 231 (E.D.N.Y. 2019)....................................................................13

*Esmont v. City of New York*,
    371 F. Supp. 2d 202 (E.D.N.Y. 2005)....................................................................10

*Evans v. Solomon*,
    681 F. Supp. 2d 233 (E.D.N.Y. 2010)......................................................................7

*Feaster v. City of Middletown*,
    16-CV-734-LMS, 2016 U.S. Dist. LEXIS 197518
    (S.D.N.Y. Nov. 28, 2016)..........................................................................................7

*Ferebee v. City of New York*,
    15-CV-1868-PAC, 2017 U.S. Dist. LEXIS 104783
    (S.D.N.Y. July 6, 2017) .........................................................................................5, 7

*Figueroa v. Mazza*,
    825 F.3d 89 (2d Cir. 2016)......................................................................................18

**Cases**                                                                       **Pages**

*France v. Morton*,
12-CV-5576-KMK, 2018 U.S. Dist. LEXIS 39211
(S.D.N.Y. Mar. 9, 2018) ...................................................................................8

*Gonzalez v. Hirschman*,
15-CV-810-GHW, 2016 U.S. Dist. LEXIS 10228
(S.D.N.Y. Jan. 28, 2016).................................................................................10

*Gorman v. Rensselaer County*,
910 F.3d 40 (2d Cir. 2018)..............................................................................17

*Graham v. Connor*,
490 U.S. 386 (1989)...........................................................................................5

*Griffin v. City of New York*,
287 F. Supp. 2d 392 (S.D.N.Y. 2003)...............................................................4

*Grytsyk v. Morales*,
19-CV-3470-JMF, 2021 U.S. Dist. LEXIS 54642
(S.D.N.Y. Mar. 22, 2021) ...............................................................................10

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982).........................................................................................15

*Harrison v. Barkley*,
219 F.3d 132 (2d Cir. 2000).............................................................................12

*Hart v. City of New York*,
11-CV-4678-RA, 2013 U.S. Dist. LEXIS 129990
(S.D.N.Y. Nov. 18, 2013) ...............................................................................14

*Henry v. Brown*,
406 F. Supp. 3d 211 (E.D.N.Y. 2016) ...............................................................9

*Husbands v. City of New York*,
05-CV-9252-NRB, 2007 U.S. Dist. LEXIS 61042
(S.D.N.Y. Aug. 16, 2007) .................................................................................7

*Jeffreys v. Rossi*,
275 F. Supp. 2d 463 (S.D.N.Y. 2003),
*aff'd sub nom. Jeffreys v. City of New York*,
426 F.3d 549 (2d Cir. 2005).........................................................................8, 9

*Johnson v. City of New York*,
18-CV-5623-ALC, 2020 U.S. Dist. LEXIS 102870
(S.D.N.Y. June 11, 2020).................................................................................10

**Cases**                                                                  **Pages**

*Jones v. Marshall*,
    08-CV-0562-RWS, 2010 U.S. Dist. LEXIS 3608
    (S.D.N.Y. Jan. 18, 2010)...................................................................................14

*King v. Falco*,
    16-CV-6315-VB, 2018 U.S. Dist. LEXIS 208684
    (S.D.N.Y. Dec. 11, 2018)..................................................................................12

*Luciano v. City of New York*,
    684 F. Supp. 2d 417 (S.D.N.Y. 2010).............................................................19

*Lynch v. Ackley*,
    811 F.3d 569 (2d Cir. 2016).............................................................................16

*Lynch v. City of Mount Vernon*,
    567 F. Supp. 2d 459 (S.D.N.Y. 2008).............................................................10

*Malley v. Briggs*,
    475 U.S. 335 (1986).........................................................................................15

*Marom v. City of New York.*,
    15-CV-2017-PKC, 2016 U.S. Dist. LEXIS 28466
    (S.D.N.Y. Mar. 7, 2016) ................................................................................5, 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).......................................................................................4, 5

*Mesa v. City of New York*,
    09-CV-10464-JPO, 2013 U.S. Dist. LEXIS 1097
    (S.D.N.Y. Jan. 3, 2013)....................................................................................18

*Morrison v. City of New York*,
    14-CV-4508-MKB, 2019 U.S. Dist. LEXIS 4839
    (E.D.N.Y. Jan. 10, 2019) .................................................................................18

*Mullenix v. Luna*,
    577 U.S. 7 (2015) (per curiam).......................................................................15

*Murray v. City of New York*,
    15-CV-6768-LGS, 2017 U.S. Dist. LEXIS 121762
    (S.D.N.Y. Aug. 2, 2017) ....................................................................................5

*Paulin v. Town of New Windsor*,
    18-CV-6182-PMH, 2020 U.S. Dist. LEXIS 184170
    (S.D.N.Y. Oct. 5, 2020) ...................................................................................12

**Cases**                                                         **Pages**

*Pearson v. Callahan*,
   555 U.S. 223 (2009).........................................................................................15, 16

*PepsiCo, Inc. v. Coca-Cola Co.*,
   315 F.3d 101 (2d Cir. 2002)......................................................................................4

*Rodriguez v. City of New York*,
   802 F. Supp. 2d 477 (S.D.N.Y. 2011).......................................................................9

*Rodriguez v. Cohall*,
   21-CV-1810-JGK, 2022 U.S. Dist. LEXIS 76633
   (S.D.N.Y. Apr. 26, 2022).........................................................................................12

*Rolkiewicz v. City of New York*,
   442 F. Supp. 3d 627 (S.D.N.Y. 2020)...................................................................8, 9

*Romano v. Howarth*,
   998 F.2d 101 (2d Cir. 1993)......................................................................................5

*Saucier v. Katz*,
   533 U.S. 194 (2001)................................................................................................16

*Savino v. City of New York*,
   331 F.3d 63 (2d Cir. 2003).......................................................................................5

*Schlaepfer v. City of New York*,
   20-CV-3339-KPF, 2022 U.S. Dist. LEXIS 175327
   (S.D.N.Y. Sep. 27, 2022)..........................................................................................6

*Schy v. Vermont*,
   2 Fed. App'x 101 (2d Cir. 2001)............................................................................10

*Serrano v. City of New York*,
   16-CV-8105-AKH, 2018 U.S. Dist. LEXIS 116262
   (S.D.N.Y. July 12, 2018) ........................................................................................18

*Smith v. City of New York*,
   18-CV-5079-MKV, 2021 U.S. Dist. LEXIS 178756
   (S.D.N.Y. Sep. 20, 2021)..........................................................................................8

*Walker v. Dep't of Corr. Serv.*,
   11-CV-993-KBF, 2012 U.S. Dist. LEXIS 21738
   (S.D.N.Y. Feb. 14, 2012).........................................................................................14

**Cases**                                                                                                          **Pages**

*Wang v. Vahldieck*,
    09-CV-3783-ARR-VVP, 2012 U.S. Dist. LEXIS 3763
    (E.D.N.Y. Jan. 9, 2012) ......................................................................................10

*Washon v. Parr*,
    561 F. Supp. 2d 394 (S.D.N.Y. 2008).............................................................5

*Webster v. City of New York*,
    333 F. Supp. 2d 184 (S.D.N.Y. 2004)..............................................................4

*White v. Pauly*,
    580 U.S. 73 (2017) (per curiam) ....................................................................15

*Wilson v. Layne*,
    526 U.S. 603 (1999)........................................................................................15

**Statutes**

28 U.S.C. § 1367(c)(3)...........................................................................................19

42 U.S.C. § 1983...................................................................................1, 11, 13, 17, 19

Fed. R. Civ. P. 56(c) ................................................................................................4

Local Civil Rule 56.1 ...............................................................................................1

## PRELIMINARY STATEMENT

There are no triable issues of fact in this case. Plaintiff alleges she was forcefully arrested and tightly handcuffed. However, plaintiff has failed to adduce any evidence from which a reasonable jury could conclude that she suffered any injury, let alone that any injury was caused by defendants. Plaintiff's medical records and prior sworn testimony directly contradict her claims. Accordingly, defendants are entitled to summary judgment on the grounds that: (i) Detective Febus did not use excessive force to arrest plaintiff; (ii) plaintiff's deliberate indifference claim fails as a matter of law; (iii) defendants are entitled to qualified immunity on all of plaintiff's claims; (iv) the assault and battery claims fail; and (v) the Court should decline to exercise supplemental jurisdiction. The Court should therefore dismiss this matter in its entirety, with prejudice.

## STATEMENT OF FACTS

On March 1, 2022, the Court dismissed plaintiff's § 1983 claims for false arrest, malicious prosecution, denial of the right to a fair trial, malicious abuse of process, and municipal liability in their entirety. (Defendants' Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 ("¶") at ¶1). There are no claims remaining against Detective Gary DeNezzo, Sergeant George Tavares, Police Officer Irwin Luperon, Police Officer Christopher Robley, or Police Officer Erlene Wiltshire. (¶2). Inspector John Chell and Officer Robley were never served and, therefore, are not defendants in this action. (¶3). Plaintiff's remaining claims are excessive force under § 1983, deliberate indifference to her medical needs under § 1983, and assault and battery under New York State law, each against Detective Danielle Febus. (¶4). Her assault and battery claims also remain against the City of New York pursuant to *respondeat superior*. (*Id.*)

On January 31, 2018, at approximately 11:00 a.m., plaintiff received a text message and phone call from Detective Febus, informing her that her son was at the Child Advocacy Center

in the care of the Queens Child Abuse Squad ("QCAS") and asking plaintiff to come pick him up. (¶5).   At approximately 12:00 p.m. on January 31, 2018, plaintiff arrived at the QCAS building. (¶6).   Plaintiff informed a male NYPD officer that she had an appointment with Detective Febus, and the male NYPD officer told plaintiff to wait in a room with glass walls ("Room") (¶7). Plaintiff waited two to three hours in the Room and did not see Detective Febus at all during that time.   (¶¶8–9).   Plaintiff was not handcuffed and was free to move around the Room.   (¶10).

While waiting, plaintiff experienced difficulty breathing.   (¶11).   Plaintiff has been prescribed an inhaler for her asthma.   (¶12).   On January 31, 2018, plaintiff did not bring her inhaler or any other asthma medication, but she did not need her inhaler while in the Room.   (¶¶13–14).   After plaintiff waited two to three hours, Detective Febus arrived and asked plaintiff about some allegations she had made against the father of her son, but plaintiff did not want to answer the detective's questions.   (¶¶15–16).   Plaintiff told Detective Febus she wanted to see her son, had a doctor's appointment, needed to go to the doctor, wanted to see her attorney, needed to drink water, and needed the bathroom.   (¶17).   Detective Febus ignored plaintiff's requests.   (¶18). Plaintiff was not in handcuffs or otherwise under arrest during this conversation, which lasted about half an hour.   (¶19).

Detective Febus ran a system check for plaintiff, which revealed there was an active investigation card ("I-Card") from the 75th Precinct stating there was probable cause to arrest plaintiff, based on a January 13, 2017 complaint against her by Mr. Liu.   (¶20).   This Court has already determined that thereafter, pursuant to the collective knowledge doctrine, Detective Febus had probable cause to arrest plaintiff on January 31, 2018, and plaintiff's claim for false arrest has been dismissed from this matter.   (¶21).

To place plaintiff in handcuffs, Detective Febus pulled plaintiff, by her back and arm, up out of a chair. (¶22). Detective Febus placed plaintiff's head against a wall, brought her hands behind her back, and placed a single handcuff on her wrist. (¶¶23–24). Ten to twenty minutes later, Detective Febus escorted plaintiff to a police vehicle by holding plaintiff's handcuffed hand, arm, or back. (¶25). While being escorted to the police vehicle, plaintiff's feet were on the ground at points and not on the ground at other points. (¶26). Plaintiff waited outside the building for ten to twenty minutes before being placed in a police vehicle. (¶27). Plaintiff's head hurt from standing outside in cold air. (¶28). Detective Febus pushed plaintiff's head down and placed plaintiff inside the police vehicle. (¶29). Plaintiff complained that her head, arm, and wrist hurt, and asked that her handcuff be loosened. (¶30). Detective Febus did not loosen plaintiff's handcuff. (¶31).

About forty-five to sixty minutes later, plaintiff arrived at the 75th Precinct. (¶32). Detective Febus removed plaintiff's handcuff and left. (¶33). In total, plaintiff was handcuffed for no more than 100 minutes. (¶34). Plaintiff was arraigned and released from custody on February 1, 2018, after which she went straight home. (¶35). About a year later, when plaintiff gave testimony under oath about the circumstances of her January 31, 2018 arrest, she did not mention any use of force by police officers, nor did she testify that she had any complaints about overly tight handcuffs. (¶36).

Plaintiff did not seek medical treatment for any injury *whatsoever* related to her arrest. (¶37). In fact, the first time plaintiff sought medical attention following her January 31, 2018 arrest was approximately three months later, on April 21, 2018. (¶38). At this doctor's visit, plaintiff complained of a cough, runny nose, and fatigue, which she reported had lasted the past two days, and intermittent hearing loss, which she reported had lasted about a month. (¶39). Her

physical examination on April 21, 2018, revealed that she had normal hearing and was simply experiencing nasal congestion.  (¶40).  On April 21, 2018, plaintiff denied having any neck pain, neck stiffness, joint pain, joint swelling, muscle weakness, shortness of breath, dizziness, vertigo, headache, tinnitus, chest pain, or any anxiety.  (¶41).  She denied experiencing any of those symptoms again at various doctor's visits on October 3, October 16, October 24, November 28, and December 17, 2018, with the exception of reporting a headache on October 16, in connection with a fever and sore throat.  (¶42).  Plaintiff began physical therapy for lower back pain that had started recently on July 14, 2019, nearly a year and a half after this arrest.  (¶43).

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by 'point[ing] to an absence of evidence to support an essential element of the nonmoving party's case." *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988)); *Webster v. City of New York*, 333 F. Supp. 2d 184, 206–07 (S.D.N.Y. 2004) (citing *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002)).  The burden then "shifts to the nonmoving party to come forward with persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Griffin v. City of New York*, 287 F. Supp. 2d 392, 396 (S.D.N.Y. 2003).  While courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party in deciding whether a genuine issue of material fact exists, once a motion for summary judgment is made and supported, the non-moving party must come forward with specific facts showing that there is a

genuine issue for trial. *Matsushita Elec. Indus.*, 475 U.S. at 587 (citation omitted). Summary judgment should be granted "if the evidence presented by the nonmoving party is merely colorable, or is not significantly probative . . . or if it is based purely on conjecture or surmise." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citations and quotation marks omitted).

## ARGUMENT

### POINT I

### DETECTIVE FEBUS DID NOT USE EXCESSIVE FORCE TO ARREST PLAINTIFF

**A.      Plaintiff's Excessive Force Claim is Belied by the Objective Evidence.**

Plaintiff's excessive force claim fails because she was not injured as a result of this incident. "[A] *de minimis* use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993). Thus, a plaintiff must demonstrate that the amount of force used was more than *de minimis*, *id*. at 105, as a "'*de minimis injury* can serve as conclusive evidence that *de minimis* force was used.'" *Ferebee v. City of New York*, 15-CV-1868-PAC, 2017 U.S. Dist. LEXIS 104783, at *20 (S.D.N.Y. July 6, 2017) (quoting *Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008)); *Marom v. City of New York.*, 15-CV-2017-PKC, 2016 U.S. Dist. LEXIS 28466, at *20 (S.D.N.Y. Mar. 7, 2016) ("Courts in this district have regularly held that a plaintiff must have sustained some injury to maintain a claim of excessive force."). A *de minimis* injury does not always defeat an excessive force claim, *Murray v. City of New York*, 15-CV-6768-LGS, 2017 U.S. Dist. LEXIS 121762, at **19–20 (S.D.N.Y. Aug. 2, 2017),  but "[p]ushes or shoves that cause no injury cannot support an excessive force claim." *Ferebee*, 2017 U.S. Dist. LEXIS 104783, at *20. This is because "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Further, for a plaintiff claiming excessive force, "it is not the case that complaints of pain, bruising, and swelling are alone sufficient to preclude summary judgment." *Schlaepfer v. City of New York*, 20-CV-3339-KPF, 2022 U.S. Dist. LEXIS 175327, at \*40 (S.D.N.Y. Sep. 27, 2022) (quotation marks omitted). The *Shlaepfer* Court noted, "[s]omewhat tellingly, Plaintiff's SAC does not allege any specific physical injury," but "[b]y the time of his deposition, Plaintiff claimed that he suffered head pain and a cut on his forehead, and that he developed a bruise the following day." *Id.* (granting summary judgment to defendants on excessive force claim).

Similarly, here, plaintiff's second amended complaint alleged, for the first time, that excessive force was used to arrest her.  (¶4).  Plaintiff testified that at the QCAS office, Detective Febus pulled plaintiff by her back and arm up out of a chair, placed her head against a wall, brought her hands behind her back, and placed a single handcuff on her wrist.  (¶¶22–24). None of this minimal physical contact rises to the level of excessive force, as merely making physical contact during a lawful arrest does not constitute a constitutional violation.  Next, Detective Febus escorted plaintiff to a police vehicle by holding plaintiff's handcuffed hand, arm, or back.  (¶25).  Plaintiff's feet were on the ground at points and not on the ground at other points. (¶27).  Again, this is plainly not excessive, as police officers are permitted to use reasonable force to effectuate an arrest.  No reasonable jury could find that the physical contact described by plaintiff, used to handcuff her and escort her to a police vehicle, was unreasonable.

This is especially so where the objective evidence shows that plaintiff did not suffer *any* injuries as a result of her arrest.  Plaintiff did not seek any medical attention *whatsoever* related to her arrest.  (¶37). At her first medical appointment after her arrest, which occurred almost three months later, plaintiff only complained of a cough, runny nose, and fatigue, which she reported had lasted the past two days, and intermittent hearing loss, which she reported had lasted about a

month.  (¶39).  Her physical examination that day revealed she had normal hearing and was simply experiencing nasal congestion.  (¶40).  Further, plaintiff denied having any neck pain, neck stiffness, joint pain, joint swelling, muscle weakness, shortness of breath, dizziness, vertigo, headache, tinnitus, chest pain, or even any anxiety, (¶41), and in fact repeatedly denied experiencing those symptoms at several follow-up appointments throughout 2018 (with the exception of once reporting a headache associated with a fever and sore throat). (¶42).  Similarly, when plaintiff began physical therapy on July 14, 2019, nearly a year and a half after her arrest, she reported that her lower back pain had just started recently.  (¶43).  And as to her head pain, specifically, plaintiff testified that this was caused by standing outside in cold air for ten to twenty minutes. (¶¶27–28).  Plaintiff's own medical records essentially show that she caught a cold three months after her arrest and made no other complaints.  Her lack of any physical injuries therefore "serve[s] as conclusive evidence that *de minimis* force was used" to arrest her.  *See Ferebee*, 2017 U.S. Dist. LEXIS 104783, at *20.

Even in cases involving more substantial uses of force by police officers, courts in this Circuit have dismissed claims of excessive force.  *See, e.g.*, *Evans v. Solomon*, 681 F. Supp. 2d 233, 252 (E.D.N.Y. 2010) (granting summary judgment where plaintiff alleged an officer twisted his arm behind his back, pinned him against his vehicle, and handcuffed him in a painful manner; and concluding plaintiff had alleged only *de minimis* force); *Husbands v. City of New York*, 05-CV-9252-NRB, 2007 U.S. Dist. LEXIS 61042, at **33–36 (S.D.N.Y. Aug. 16, 2007) (granting summary judgment where officer punched and then handcuffed plaintiff, who merely "kept his arms by his sides in a manner that prevented [the] Officer from placing them behind his back in order to handcuff him"); *see also Feaster v. City of Middletown*, 16-CV-734-LMS, 2016 U.S. Dist. LEXIS 197518, at *12 (S.D.N.Y. Nov. 28, 2016) (dismissing excessive force claim

where defendant "grabbed plaintiff and yanked her out of the vehicle"); *Marom*, U.S. Dist. LEXIS 28466, at \*\*18–21 (dismissing excessive force claim where "[t]he most severe of [plaintiff's] excessive force allegations are that officers 'grabbed [plaintiff] by her arms, pulled her by her aims, and threw her onto the ground,' . . . and that officers dragged her by her hair and pulled her up onto her feet").  Plaintiff was not injured as reflected by her medical records, which serve as conclusive evidence that no excessive force was used in effectuating her arrest.

Moreover, no reasonable jury would believe that any officer used excessive force. "It is axiomatic that courts should not assess credibility on summary judgment," but "when evidence is so contradictory and fanciful that it cannot be believed by a reasonable person, it may be disregarded." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 476 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).  "The rationale underlying the rule that contradictory evidence may be disregarded is that a party cannot rely upon implausible testimony to create a triable issue of fact." *Id.* at 477; *Jeffreys*, 426 F.3d at 554.

"[I]n excessive force cases, summary judgment is proper where undisputed medical records *directly and irrefutably* contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening." *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 641 (S.D.N.Y. 2020) (quotation marks omitted).  In fact, courts in this Circuit routinely dismiss excessive force claims at the summary judgment stage on this basis.  *See, e.g., Smith v. City of New York*, 18-CV-5079-MKV, 2021 U.S. Dist. LEXIS 178756, at \*\*13–18 (S.D.N.Y. Sep. 20, 2021) (granting summary judgment where "[t]he medical records directly and irrefutably contradict Plaintiff's account of his encounter with the police"); *France v. Morton*, 12-CV-5576-KMK, 2018 U.S. Dist. LEXIS 39211, at \*36 (S.D.N.Y. Mar. 9, 2018) (granting summary judgment because "Plaintiff's testimony, which is unsubstantiated by any other evidence,

is 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint'" (quoting *Jeffreys*, 426 F.3d at 555)); *Rodriguez v. City of New York*, 802 F. Supp. 2d 477, 481 (S.D.N.Y. 2011) (granting summary judgment where plaintiff alleged correction officers choked him and punched him in the head and arm, rendering him unconscious, but his medical records did not support his alleged injuries); *Henry v. Brown*, 406 F. Supp. 3d 211, 214–15 (E.D.N.Y. 2016) (granting summary judgment where plaintiff alleged defendants caused him to sustain a permanent leg injury and a head injury rendering him unconscious, but plaintiff's medical records contradicted those claims); *Davis v. Klein*, 11-CV-4868-ENV, 2013 U.S. Dist. LEXIS 153469, at *11 (E.D.N.Y. Oct. 17, 2013) (granting summary judgment where "medical records, bluntly, directly contradict the version of facts plaintiff gave in his complaint as well as in his deposition," and "the record is utterly devoid of evidence of any kind supporting [his] description of his injuries—other than his own claims").

Here, the Court should also consider that in the year after her arrest, plaintiff testified about her arrest and did not mention *any* use of force by police officers during this incident, nor did she testify that she had any complaints about how she had been handcuffed. (¶36). This testimony, combined with the lack of any medical evidence of any injury, is further indication that "no reasonable jury could credit plaintiff's [new] account of the happening." *See Rolkiewicz*, 442 F. Supp. 3d at 641. As plaintiff has not adduced any evidence to corroborate her own self-serving deposition testimony, that testimony fails to create a triable issue of fact. *Jeffreys*, 426 F.3d 554. Thus, Detective Febus is entitled to summary judgment on the excessive force claim.

## B.      Plaintiff's Excessively Tight Handcuffing Claim Fails

Plaintiff's excessive force claim also fails to the extent it is based on tight handcuffing, as it is undisputed that she only suffered temporary discomfort. "[H]andcuffs must

- 9 -

be reasonably tight to be effective." *Johnson v. City of New York*, 18-CV-5623-ALC, 2020 U.S. Dist. LEXIS 102870, at *8 (S.D.N.Y. June 11, 2020) (dismissing tight-handcuffing claim); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) ("[T]o be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out."). Thus, "[i]t is well established in this Circuit that claims of excessive force are not established by allegations that overly tight handcuffs caused minor, temporary injuries." *Grytsyk v. Morales*, 19-CV-3470-JMF, 2021 U.S. Dist. LEXIS 54642, at *29–30 (S.D.N.Y. Mar. 22, 2021) (quotation marks and alterations omitted); *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) ("There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." (collecting cases)); *see, e.g.*, *Wang v. Vahldieck*, 09-CV-3783-ARR-VVP, 2012 U.S. Dist. LEXIS 3763, at **24–25 (E.D.N.Y. Jan. 9, 2012) (granting summary judgment where plaintiff was "shrieking in pain" from tight handcuffs but there was "no evidence that the tight handcuffing caused any actual physical injury"). To determine whether a plaintiff can pursue an claim for excessively tight handcuffing, district courts "'frequently consider (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists.'" *Id.* at *29 (quoting *Gonzalez v. Hirschman*, 15-CV-810-GHW, 2016 U.S. Dist. LEXIS 10228, at *4 (S.D.N.Y. Jan. 28, 2016)).

The short duration of the handcuffing is also often a factor in dismissal of these claims. *See, e.g.*, *Schy v. Vermont*, 2 Fed. App'x 101, 101–03 (2d Cir. 2001) (summary order) (affirming summary judgment on excessive force claim based on painful handcuffing for two-hour period, and noting "not every infliction of pain reaches the level of a constitutional violation"); *Arnold v. Westchester Cty.*, 09-CV-3727-JSR-GWG, 2012 U.S. Dist. LEXIS 12992, at **25–26

(S.D.N.Y. Feb. 3, 2012) (dismissing prisoner's claim where officer twisted plaintiff's handcuffs and pulled him down a hallway for less than a minute, causing temporary pain and numbness); *Bender v. City of New York*, 09-CV-3286-BSJ, 2011 U.S. Dist. LEXIS 103947, at **18–19 (S.D.N.Y. Sept. 14, 2011) (finding "extremely tight" handcuffing for nearly fourteen hours, that left indentations in the plaintiff's forearms for six hours after removal, "qualifies as the kind of 'temporary discomfort' that courts have consistently found cannot constitute a claim for excessive force"); *Barratt v. Joie*, 96-CV-0324-LTS, 2002 U.S. Dist. LEXIS 3453, at **21–31 (S.D.N.Y. Mar. 4, 2002) (granting summary judgment to defendants where plaintiff was handcuffed tightly for five hours, resulting in bruising and numbness).

Here, only one of plaintiff's hands was handcuffed.  (¶46).  She was handcuffed for no more than 100 minutes, while she was being transported from the QCAS office to 75th Precinct. (¶¶25, 27, 32–34).  And Detective Febus promptly removed plaintiff's handcuff upon their arrival at the 75th Precinct.  (¶33).  While plaintiff complained about the handcuff's tightness and Detective Febus did not loosen it, (¶¶30–31), the temporary nature of her handcuffing defeats her excessive force claim.  Of course, her handcuffing did not cause *any* injuries whatsoever, aside from temporary discomfort.  Based on these undisputed facts, no reasonable jury could find for plaintiff on her claim of excessively tight handcuffing, and defendants are entitled to summary judgment on this claim.

### POINT II

### PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM FAILS AS A MATTER OF LAW

**A.     Plaintiff Did Not Have an Objectively Serious Medical Need**

Plaintiff's claim for deliberate indifference claim fails because she has failed to prove she suffered from an objectively serious medical need.  A pretrial detainee's § 1983 claim

for deliberate indifference to a serious medical need arises under the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To establish this claim, a "plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong." *King v. Falco*, 16-CV-6315-VB, 2018 U.S. Dist. LEXIS 208684, at *7 (S.D.N.Y. Dec. 11, 2018). "Under the first prong, [a plaintiff's] medical needs must be objectively 'serious.'" *Paulin v. Town of New Windsor*, 18-CV-6182-PMH, 2020 U.S. Dist. LEXIS 184170, at **16–17 (S.D.N.Y. Oct. 5, 2020) (citations omitted). "Under the second prong, 'the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them.'" *Id.* (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)). A plaintiff can show deliberate indifference by demonstrating "that a defendant 'kn[e]w of and disregard[ed] an excessive risk to [plaintiff's] health or safety.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Here, plaintiff had difficulty breathing in the Room at the QCAS. (¶11). Plaintiff, who has asthma, was prescribed an inhaler, but she did not bring it with her on January 31, 2018. (¶¶12–13). But this is of no moment because plaintiff did not suffer an asthma attack or otherwise require the use of her inhaler that day. (¶14). For this reason alone, plaintiff's claim for deliberate indifference to her medical needs fails, as it is apparent based on her own testimony that she did not actually require any medical attention.

Regardless, and perhaps most critically, breathing difficulties, including those exacerbated by asthma, are not a sufficiently serious condition for purposes of a deliberate indifference claim. *See Rodriguez v. Cohall*, 21-CV-1810-JGK, 2022 U.S. Dist. LEXIS 76633, at *10 (S.D.N.Y. Apr. 26, 2022) (collecting cases) (dismissing deliberate indifference claim, where plaintiff alleged a chemical agent aggravated his asthma and that he experienced breathing

difficulties, chest pains, blurry vision, dizziness, skin burning and irritation, trauma, and anxiety);

*Dollard v. City of New York*, 408 F. Supp. 3d 231, 237 (E.D.N.Y. 2019) (granting summary

judgment to defendants and holding plaintiff had "not adduced evidence of a serious medical

condition" because her "difficulty breathing, vertigo, and brief losses of consciousness are not

condition[s] of urgency that may produce death, degeneration, or extreme pain" (cleaned up)).

Therefore, even to the extent plaintiff argues that she complained to Detective Febus about her

breathing difficulties and was ignored, this does not give rise to a claim for deliberate indifference

to her medical needs because plaintiff was not suffering from an objectively serious medical

condition.  Accordingly, Detective Febus is entitled to summary judgment on this claim.

**B.**     **Plaintiff Did Not Suffer Unconstitutional Conditions of Confinement**

The deliberate difference claim against Detective Febus also fails to the extent it is

based on plaintiff's conditions of confinement.  Detective Febus merely questioned plaintiff at the

QCAS office, handcuffed her, and transported to the 75th Precinct, all of which lasted about two

hours. (¶¶19, 25, 27, 32, 34).  Detective Febus was not present before or after that time period.

(¶¶9, 15, 33).  Thus, plaintiff's requests for water, food, and a bathroom at any time before or after

that two-hour period cannot support her deliberate indifference claim against Detective Febus.  To

the extent plaintiff argues she asked Detective Febus for water, food, or a bathroom during that

two-hour period and was ignored, such a temporary deprivation fails, as a matter of law, to give

rise to a § 1983 deliberate indifference claim.

A plaintiff's allegations that she was denied food, water, and use of a bathroom for

many hours may be sufficient to state a deliberate indifference claim and overcome a motion to

dismiss.  *Cano v. City of New York*, 44 F. Supp. 3d 324, 334 (E.D.N.Y. 2014) (finding "depriving

an incarcerated individual the ability 'to eat, drink, or use the bathroom' for several hours"

sufficient); *Boadi v. City of New York*, 12-CV-2456-BMC 2012 U.S. Dist. LEXIS 104652, at *11

(E.D.N.Y. July 24, 2012) (finding plaintiff's allegation "that he was shackled to a wall for 18 hours, during which time he was denied food, water, and the chance to use the toilet," sufficient to avoid dismissal, though noting "the denial of access to a bathroom for several hours likely does *not* amount to a serious deprivation of human needs" (emphasis added)).   But "in ordinary circumstances a *temporary* deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination simply does not rise to the level" of a constitutional violation.   *D'Attore v. New York City*, 10-CV-3102-JSR-MHD, 2014 U.S. Dist. LEXIS 181939, at *28 (S.D.N.Y. Sep. 24, 2014) (emphasis added) (quotation marks omitted).

Specifically, denial of access to the bathroom for three hours or less is not sufficient.   *See, e.g.*, *Walker v. Dep't of Corr. Serv.*, 11-CV-993-KBF, 2012 U.S. Dist. LEXIS 21738, at **2, 7–8 (S.D.N.Y. Feb. 14, 2012) (dismissing deliberate indifference claim where plaintiff was denied bathroom use and water for 80 minutes and experienced kidney pain); *Jones v. Marshall*, 08-CV-0562-RWS, 2010 U.S. Dist. LEXIS 3608, at *9 (S.D.N.Y. Jan. 18, 2010) (dismissing claim where plaintiff was denied bathroom access for 90 minutes); *Bourdon v. Roney*, 99-CV-0769-LEK-GLS, 2003 U.S. Dist. LEXIS 3234, at *30 (N.D.N.Y. Mar. 6, 2003) (granting summary judgment to defendants on deliberate indifference claim where plaintiff was arrested and "placed in a hot, unventilated car for three hours without water or bathroom privileges"); *compare Hart v. City of New York*, 11-CV-4678-RA, 2013 U.S. Dist. LEXIS 129990, at **26–30 (S.D.N.Y. Nov. 18, 2013) (denying summary judgment where plaintiff alleged that police denied him access to a bathroom for 10 to 12 hours, despite pre-existing condition of frequent urination, with result that plaintiff urinated on himself) *with id.* at **28–29 (collecting cases in which denial of access to a bathroom for shorter periods of time did not rise to the level of a constitutional violation).

Here, plaintiff may argue Detective Febus denied her access to water and a bathroom for, at most, about two hours.   Yet plaintiff does not claim she suffered any serious physical harm as a result — only temporary discomfort.   Based on these undisputed facts, no reasonable jury could find Detective Febus violated plaintiff's constitutional rights.   Even in cases where plaintiffs alleged far more dire deprivations, such as being placed in a hot, unventilated car for three hours without water or a bathroom, courts in this Circuit have granted summary judgment to defendants on deliberate indifference claims.   *See Bourdon*, 2003 U.S. Dist. LEXIS 3234, at *30.   Detective Febus is similarly entitled to summary judgment here.

**POINT III**

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFF'S CLAIMS**

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800. 818 (1982)).   A right is clearly established only when a plaintiff can point either to "cases of controlling authority in [the] jurisdiction at the time of the incident" or to "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."   *Ashcroft v. al-Kidd*, 563 U.S. 73, 735 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).   Clearly established law should not be defined "as a high level of generality," *al-Kidd*, 563 U.S. at 742, but instead must be "'particularized' to the facts of the case.'"   *White v. Pauly*, 580 U.S. 73, 78 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"   *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In practice, this means that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Coollick v. Hughes*, 699 F.3d 211, 221 (2d Cir. 2012). Because the focus of qualified immunity is whether the officers had fair notice that their conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.* This is because qualified immunity provides immunity from suit, rather than just a defense to liability. *See, e.g.*, *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). That "benefit is effectively lost if a case is erroneously permitted to go to trial." *Id.* Thus, it is necessary that qualified immunity questions "be resolved 'at the earliest possible stage of litigation.'" *Id.* (quoting *Pearson*, 555 U.S. at 231–232). As the Supreme Court has noted:

> It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier v. Katz*, 533 U.S. 194, 205 (2001).

As of January 31, 2018, there was no Supreme Court or Second Circuit law holding that it would be constitutionally impermissible for a police officer to: (a) pull an arrestee up out of a chair, place the arrestee's head against the wall, handcuff one of the arrestee's wrists, and hold the arrestee's handcuffed hand or arm while escorting them to a police vehicle, causing no injuries beyond temporary discomfort; (b) refuse to loosen arrestee's tight handcuff for 100 minutes despite complaints; (c) deny an arrestee access to water and a bathroom for no more than two hours; or (d) fail to provide an arrestee with medical attention when they have asthma but are not having an

asthma attack or otherwise require use of an inhaler.  In fact, as explained above, there is much controlling case law holding that these actions do *not* give rise to claims for constitutional violations under § 1983.  *See* Points I–II, *supra*.

Thus, in the absence of controlling case law holding otherwise, a reasonable officer in defendants' positions would not have known that it was unreasonable to arrest plaintiff in the manner she described or deny her access to a bathroom or water for two hours, half of which was spent in a police vehicle without such amenities.  *Cf. Cugini v. City of New York*, 941 F.3d 604, 608 (2d Cir. 2019) (affirming that qualified immunity would shield an officer because at the time of the incident it was not clearly established that "a plaintiff who did not verbally complain or request to have her handcuffs adjusted or removed, or both, could nevertheless recover on a handcuffing-based excessive force claim"); *Gorman v. Rensselaer County*, 910 F.3d 40, 47 (2d Cir. 2018) (affirming defendants were entitled to qualified immunity on First Amendment retaliation claim because at the time of the incident "a reasonable officer would not have known that it was clearly established law that [plaintiff's] speech constituted a matter of public concern"); *Berg v. Kelly*, 897 F.3d 99, 112 (2d Cir. 2018) ("[I]n the absence of clearly established law prohibiting the challenged detentions in the circumstances presented, the Officers are entitled to qualified immunity" (citation omitted)).  Accordingly, as the law was not clearly established, defendants are entitled to qualified immunity from plaintiff's § 1983 claims.

## POINT IV

## THE ASSAULT AND BATTERY CLAIMS FAIL

Plaintiff's state law claims for assault and battery against Detective Febus fail because her arrest was supported by probable cause, (¶21), and only *de minimis* force was used to arrest her.  Point I, *supra*.  "Under New York law, assault is an intentional placing of another

person in fear of imminent harmful or offensive contact," and a "battery [is] an intentional wrongful physical contact with another person without consent." *Morrison v. City of New York*, 14-CV-4508-MKB, 2019 U.S. Dist. LEXIS 4839, at *22 (E.D.N.Y. Jan. 10, 2019) (citations omitted). "A lawful arrest is not an assault or battery under New York law, provided the force used is reasonable." *Figueroa v. Mazza*, 825 F.3d 89, 105 n.13 (2d Cir. 2016); *see, e.g.*, *Serrano v. City of New York*, 16-CV-8105-AKH, 2018 U.S. Dist. LEXIS 116262, at **29–30 (S.D.N.Y. July 12, 2018) (granting summary judgment to defendants, finding "[b]ecause the officers had probable cause to arrest plaintiff, [he] cannot maintain an assault and battery claim under New York law"); *Mesa v. City of New York*, 09-CV-10464-JPO, 2013 U.S. Dist. LEXIS 1097, at *81 (S.D.N.Y. Jan. 3, 2013) (granting summary judgment on assault and battery claim). Thus, where a plaintiff's arrest is lawful, "the test for whether [she] can maintain state law assault and battery causes of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim." *Benbow v. City of New York*, 17-CV-06457-EK-JRC, 2022 U.S. Dist. LEXIS 157815, at *42 (E.D.N.Y. Aug. 31, 2022) (report and recommendation) (quotation marks omitted). In other words, "[u]nder federal or state law, a plaintiff must show that the amount of force used was objectively unreasonable based upon a consideration of the perspective of the officer at the time." *Id.* (quotation marks omitted)

The Court has already determined that plaintiff's arrest was lawful. (¶21). Thus, defendants were privileged to use reasonable force to effectuate that arrest. Here, it was reasonable for Detective Febus to pull plaintiff from a chair and press her head against a wall in order to handcuff her, especially where this caused no injuries. Point I, *supra*. Nor would it be an unreasonable use of force to hold plaintiff by her arm or hand while escorting her to a police vehicle. Accordingly, for the same reasons as stated above with respect to her excessive force

claim, plaintiff's claims for assault and battery fail as a matter of law, and defendants are entitled to summary judgment on those claims.

### POINT V

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION

For the reasons discussed herein, plaintiff's claims for assault and battery should be dismissed on their merits. Point IV, *supra*. However, should the Court decline to dismiss plaintiff's state law claims on their merits, the Court should nevertheless decline to exercise supplemental jurisdiction over those claims. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Where a plaintiff's federal § 1983 claims are dismissed, "there remains no independent jurisdictional basis for the state law claims." *Luciano v. City of New York*, 684 F. Supp. 2d 417, 422 (S.D.N.Y. 2010); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."). Here, there are no triable issues of fact bearing on plaintiff's remaining § 1983 claims. *See* Points I–III, *supra*. Accordingly, as there is no independent jurisdictional basis for plaintiff's assault and battery claims, the Court should decline to exercise supplemental jurisdiction and dismiss this matter in its entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants City of New York and Detective Danielle Febus respectfully request that the Court grant their motion for summary judgment, together with such costs, fees, and other further relief as the Court deems just and proper.

Dated:      New York, New York
            March 10, 2023

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
*Attorney for Defendants City & Febus*
100 Church Street
New York, New York 10007
(212) 356-3541

By:      _____
         Jeffrey F. Frank
         *Assistant Corporation Counsel*
         Special Federal Litigation

cc:      All Counsel (via ECF)

## CERTIFICATE OF COMPLIANCE

Pursuant to Your Honor's Individual Practices, I hereby certify that this Memorandum of Law in Support of Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 contains 6,332 words, excluding this certification, the cover page, the table of contents, and the table of authorities. I further certify that defendants' moving papers comply with the rest of Your Honor's formatting rules.

By: _____

Jeffrey F. Frank
*Assistant Corporation Counsel*
Special Federal Litigation